BLOOMINGTON SCHOOL DISTRICT NO. 17, a Common School Corporation, Herman Kieper, F. A. Albus and L. A. Scheer, School Board of Bloomington School District No. 17, St. Anna School District No. 21, a Common School Corporation, Fred Rudel, M. Rodacker and Otto Kramer, School Board of St. Anna School District No. 21, and Henry J. Shaver, Resident and Taxpayer of St. Anna School District, and Herman Kieper, Resident and Taxpayer of Bloomington School District, Appearing for Themselves and Others Similarly Situated, Appellants, v. LOUISE F. LARSON, Superintendent of Schools of Wells County, North Dakota, Gust Reddig, Dick Enbrecht, Ed. Suekut, Anton Bohn and John P. Strauss, as the Board of County Commissioners of Wells County, North Dakota, Respondents.

(207 N. W. 650.)

**Schools and school districts — laws as to changing boundaries and formation of school districts held separate and distinct for different purposes and not to affect each other.**

1. Chapter 213, Laws 1917, relating to the changing of boundaries of common school districts, and chapter 197, Laws 1919, relating to the formation of common school districts, are construed, and it is *held:*

That the two statutes are separate and distinct legislative enactments relating to different subjects and enacted for different purposes; each applies to and covers the whole subject to which it relates, wholly unaffected by the provisions of the other.

**Schools and school districts — power of county commissioners and county superintendent of schools to organize new school district exercised conformably and is subject only to act of 1917.**

2. That the power conferred by chapter 197, Laws 1919, upon the board of county commissioners and the county superintendent of a county, to "organize a new school district from another district or from portions of districts already organized, if in their judgment the organization of a new district is desirable and necessary, upon being petitioned so to do by at least two thirds of the school voters residing in the proposed district," is to be exercised conformably, and is subject only, to the provisions of chapter 213, Laws 1917, relating to the changing of boundaries of common school districts.

Opinion filed January 29, 1926.

Schools and School Districts, 35 Cyc. p. 834 n. 91, 92.

Appeal from the District Court of Wells County, *Coffey*, J.

Certiorari by Bloomington School District and others against Louise F. Larson, County Superintendent of Schools of Divide County and the Members of the Board of County Commissioners of said Wells County, to review proceedings of said Board of County Commissioners and County Superintendent of Schools, relating to the formation of a new common school district out of portions of existing school districts.

From a judgment in favor of respondents the relators appeal.

Affirmed.

*Sinkler & Brekke*, for appellants.

*J. J. Youngblood*, for respondents.

CHRISTIANSON, Ch. J. This is an appeal from a judgment in a certiorari proceeding. The writ was issued by the district court of Wells county to review proceedings had before, and an order made by, the county superintendent and the county commissioners of Wells county, purporting to organize a new common school district from portions of three then existing common school districts.

The material facts are as follows: Prior to June 11th, 1925, there

was duly presented to and filed with the board of county commissioners and the county superintendent of schools of said Wells county, a petition signed by two thirds of the school voters residing in the following territory, viz.: All of sections 1 to 23, inclusive, township 148, range 70; all of sections 31 to 36, inclusive, of township 149, range 70; and sections 1, 2, 11, 12, 13, 14, 23 and 24 in township 149, range 71, praying that such territory be organized as a new common school district to be known as Fessenden school district No. 40. At the time these petitions were filed Sections 1 to 23, both inclusive, of township 148, range 70, constituted a part of Oshkosh school district No. 16; sections 31 to 36, both inclusive, of township 149, range 70, constituted a part of Bloomington school district No. 17, and sections 1, 2, 11, 12, 13, 14, 23 and 24 of township 149, range 71, constituted a part of St. Anna school district No. 21. The three school districts, namely, Oshkosh school district No. 16, Bloomington school district No. 17, and St. Anna school district No. 21, were all common school districts. The lines of the old districts and of the new school districts are indicated on the following plat:

The petition for the organization of the proposed school district came on to be heard before the board of county commissioners and the county superintendent, pursuant to notice duly given, on July 15th, 1925. A number of persons residing within the Bloomington and St. Anna school districts filed protests against the granting of the petition. After a full hearing an order was entered granting the petition for the organization of the proposed new school district. Thereafter the rela-

tors instituted this certiorari proceeding. All the proceedings had before the Board were certified to the district court; and upon hearing had in that court certain oral testimony was adduced. The trial court entered judgment sustaining the order creating a new school district and ordered that the writ of certiorari, and all the proceedings had thereunder, be dismissed. And the relators have appealed from such judgment.

The questions presented on this appeal involve a construction of § 1146, Comp. Laws 1913, as amended by chapter 213, Laws 1917, and § 1147, Comp. Laws 1913, as amended by chapter 197, Laws 1919. The provisions as embodied in the 1913 Comp. Laws, and as amended by subsequent enactments and now in force are set forth in parallel columns:

"The board of county commissioners and county superintendent of schools may change the boundaries of any school district or consolidate two or more districts already organized if in their judgment such change is desirable or necessary upon being petitioned so to do by a majority of the school voters residing in the districts whose boundaries will · be affected by such change." Comp. Laws 1913, § 1146.

"The board of county commissioners and county superintendent of schools upon being petitioned so to do by a majority of the school voters residing in the districts whose boundaries will be affected, shall submit to the qualified voters at the next annual school election any proposal to change the boundaries of any school district or to consolidate two or more districts already organized. Upon ratification of the proposed change of boundaries the county commissioners shall arrange the boundaries as directed." Comp. Laws 1913, § 1146, as amended by Laws 1917, chap. 213.

"The board of county commissioners and county superintendent may organize a new school district from portions of school districts

"The board of county commissioners and county superintendent may organize a new school district from another district or from por-

already organized, if in their judgment the organization of a new district is desirable and necessary, upon being petitioned so to do by at least a majority of the school voters residing in the districts whose boundaries will be affected by the organization of a new district, and by at least three-fourths of the residents of the territory to be included in the new district. No school district shall be organized under the provisions of this section which shall have less than twenty thousand dollars assessed valuation and shall have residing therein less than twelve children of school age; provided, that when the districts from portions of which such new district is sought to be organized, lie in two or more adjoining counties, such new districts shall be organized by the concurrent action of the boards of county commissioners and county superintendents of such counties; provided, further, that action on such organization shall be taken only at the July meeting of the county commissioners when petitioned by a majority of the voters residing in each of the districts to be affected. Comp. Laws, 1913, § 1147.

tions of districts already organized, if in their judgment the organization of a new district is desirable and necessary, upon being petitioned so to do by at least two-thirds of the school voters residing in the proposed district. When two or more adjoining counties are affected, such proposed new district shall be organized by the concurrent action of the boards of county commissioners and county superintendents of such counties. Action on such organization shall be taken only at the July meeting of the county commissioners. Provided, that all assets and liabilities shall be equalized according to Section 1327 of the Compiled Laws of North Dakota for the the year 1913." Comp. Laws 1913, § 1147, as amended by Laws 1919, chap. 197.

Section 1148, Comp. Laws 1913, provides: "Whenever the board of county commissioners and county superintendent of schools shall be

petitioned to organize a new school district or to change the boundaries of districts already organized, the county superintendent shall give public notice, for at least thirty days, to the residents of the districts whose boundaries will be affected by the organization of the new district, by mailing a notice to that effect to each school officer of such districts, and by publishing the same in the official newspaper of the county published nearest that district." Comp. Laws 1913, § 1148.

The petition for the organization of Fessenden school district No. 40 was filed in conformity with, and fulfilled the requirements of, § 1147, Comp. Laws 1913, as amended by chapter 197, Laws 1919, and notice of the hearing of such petition was given as prescribed by § 1148, Comp. Laws 1913. But no election was called in any one of the three school districts whose boundaries would be affected by the organization of the proposed school district. And the question presented on this appeal is whether such election was a necessary pre-requisite to the detachment of territory from the existing districts and the inclusion thereof in the new district. In other words, the relators contend that § 1146, Comp. Laws 1913, as amended by chapter 213, Laws 1917, is applicable as well where the boundaries of an existing school district are changed by the creation of a new district as where such boundaries are changed when no new district is created. And they contend that the county superintendent and the board of county commissioners, acting under § 1147, as amended by chapter 197, Laws 1919, have no power to detach territory from an existing common school district and include such territory in a new school district unless and until the proposed detachment of territory has been approved by the voters of the district from which the territory is detached.

After a careful consideration we have reached the conclusion that the contentions thus advanced cannot be sustained. In our opinion the statutes themselves, as well as the history of the legislation, clearly indicate that in the enactment of chapter 197, Laws 1919, the lawmakers intended to deal with a wholly different subject from that dealt with in chapter 213, Laws 1917. Chapter 213, Laws 1917, by its express terms purports to be an amendment merely of § 1146, Comp. Laws 1913, and to relate only to the change of boundaries or consolidation of existing common school districts. It does not purport to relate to the organization of new school districts, or to change in any manner the then exist-

ing law relating to the organization of new common school districts as embodied in § 1147, Comp. Laws 1913. Chapter 197, Laws 1919, according to its express terms is an act to amend the then existing laws relating to the formation of new common school districts. In the enactment of said statute the lawmakers had in mind, and were dealing only with, that question, namely, *the formation of new common school districts;* and they prescribed the conditions under which such districts might be formed, and the procedure to be followed in so doing. The purposes and objects of the two statutory enactments were, we think, wholly different. And in the enactment of chapter 197, Laws 1919, the legislature had no intention to either repeal or in any manner change the law as embodied in said chapter 213, Laws 1917. Loucks v. Phelps, 48 N. D. 1059, 189 N. W. 107. In other words, the legislature was dealing with two different subjects and intended that each of the two statutes should be effective for the respective purposes for which they were enacted.

If the statutes be construed as contended for by the relators, the organization of a new common school district out of parts of two or more existing districts would, indeed, be a most difficult and tedious proceeding. It would be necessary that petitions be presented to the county superintendent and the board of county commissioners both under chapter 213, Laws 1917 and under chapter 197, Laws 1919. That is, it would be necessary: (1) that a petition or petitions be presented, signed by a majority of the voters in each of the districts affected, asking for the proposed change in boundaries; and (2) that a petition be presented, signed by two thirds of the voters in the proposed new district, asking for the organization of such district. And upon the presentation of such petition or petitions it would be necessary for the board of county commissioners and superintendent of schools to submit the question of the proposed change of boundaries, to the voters of each of the school districts from which it was proposed to detach territory, at the annual school election held on the first Tuesday in June. And it would, also, be necessary to give notice of the hearing of the petition for the organization of the new district more than thirty days before the meeting of the county commissioners appointed to be held on the first Monday in July.

Obviously, one or all of the various proceedings so instituted would

have to be made conditional upon the result of the other proceeding or proceedings. It would, of course, be impossible to take final action upon the petition for the organization of a new school district until the territory sought to be included therein had become subject to the jurisdiction of the board to whom the petition was presented, and available for inclusion in the proposed new school district. Thus, in the case at bar if the contention of the relators is correct the board of county commissioners and county superintendent would have been required to submit the question of the proposed change of boundaries— that is, the proposed exclusion of territory—to the electors of Bloomington, St. Anna and Oshkosh school districts at the annual school election held Tuesday, June 2nd, 1925. Let us assume that in the instant case the procedure urged by the relators had been adopted and that the voters in St. Anna School District had approved the proposed change in boundaries, and that the voters in Bloomington and Oshkosh school districts had rejected the same, then when the petition for the organization of the proposed new school district came on for hearing before the board of county commissioners and county superintendent, they would have been powerless to grant the petition regardless of how desirable or necessary the formation of the proposed new district might have appeared to them, as they would have had no power to organize the proposed district according to the terms of the petition. Then the novel situation would have existed that a proposal to detach certain territory from St. Anna school district would have received the approval of the electors of that district; and under the provisions of chapter 213, Laws 1917, it would have been the duty of the Board of county commissioners to carry that proposal into effect and, yet, there would have been no power in that board, or in any other body, to include the territory, which had been detached, in another district, for even though a petition had at once been presented, asking that such territory be included in some other school district, the board of county commissioners and county superintendent would have been required to submit that proposal to the electors of the district whose boundary would be affected by the proposed inclusion, and such election, according to the statute, could not be held until the next annual school election appointed by law to be held on the first Tuesday in June, 1926. We do not believe that the legislature intended to make it possible that any

such situation could ever arise. The presumption is to the contrary. 26 Am. & Eng. Enc. Law, p. 648. And so is the uniform construction of public officers charged with the duty of administering the laws; and such construction has received at least the tacit approval of this court. State ex rel. Jensen v. Strauss, 48 N. D. 927, 187 N. W. 964.

It will be noted that both statutes are positive in their terms. Chapter 213, Laws 1917, makes no provision for a conditional submission of a proposal to change the boundaries of a school district. In other words, said statute makes no provision for the submission of a proposal that a change of boundaries be authorized provided some other school district or school districts shall, also, approve of other conditional proposals to detach certain of their territory, and thus make it possible to include all of certain specified territory in some new school district. Neither does chapter 197, Laws 1919, make provision for the submission of a petition for the organization of a new school district conditional upon the favorable vote in some school district or school districts whose boundaries will be affected by the proposed inclusion of certain territory within the proposed new school district. On the contrary, chapter 197, Laws 1919, in express terms, authorizes the board of county commissioners and the county superintendent upon being petitioned so to do by at least two thirds of the school voters residing within a proposed new school district to organize such new district from another district or from portions of districts already organized. The power thus conferred upon the board of county commissioners and the county superintendent to organize a new common school district is not made dependent upon the vote of the people of the proposed new district. On the other hand, the board of county commissioners and county superintendent have no discretion as regards a proposition to change the boundaries of existing districts or to consolidate two or more common school districts. These are questions which, by the plain terms of the statute (Laws 1917, chap. 213) are reserved for the determination of the voters of the districts affected alone. When a sufficient petition for either of the stated purposes is presented, the board of county commissioners and county superintendent have no option; they are required to submit the question at the next annual school election to the voters of the district or districts affected, and if the proposition is approved by the voters, the county commissioners

and county superintendent are required to carry the mandate of the electors into effect. But in the organization of a new common school district the board of county commissioners and county superintendent are vested with discretion and judgment. Upon presentation of a proper petition they are required to give notice of a hearing and consider the petition at the July meeting of the board of county commissioners, and after such hearing it is incumbent upon them to determine whether it is desirable or necessary that the proposed new district be organized. If they find it to be desirable or necessary they have the power, and it is their duty, to organize the new district; but if they find it to be undesirable or unnecessary to organize the proposed district it is their duty and within their power to reject the petition.

It follows from what has been said that the procedure followed in this case was in conformity with the statute.

The judgment appealed from is affirmed.

JOHNSON, BURKE, BIRDZELL, and NUESSLE, JJ., concur.