Howard WEHRUNG, Andrew Johnsrud, Ole Eide, Theodore Felland, J. C. Zeller, Maurice Davidson, David Sherley, and W. A. Schoenlein, for themselves and for all others similarly situated, Contestants, Petitioners and Appellants,

v.

IDEAL SCHOOL DISTRICT NO. 10, a public corporation within McKenzie County, North Dakota; R. M. Christenson, the members of the School Board of said Ideal School District No. 10, a public corporation, and Marjorie Hoover, the Clerk in and for said Ideal School District No. 10, a public corporation, Contestees, and Respondents.

No. 7593.

Supreme Court of North Dakota.

July 13, 1956.

W. A. Jacobsen, Watford City, for appellants.

John O. Garaas and James L. Taylor, Watford City, for respondents.

GRIMSON, Judge.

On the 14th day of October 1955, the Ideal School District No. 10, of McKenzie County, North Dakota, held an election to determine whether to issue negotiable bonds in the amount not exceeding $120,000. A notice of said election was duly published and at said election 480 votes were cast in favor of issuance of the bonds and 237 were cast against it. The vote in favor was more than the required 66⅔rds percent of the voters who had voted. Section 21–0307 NDRC 1943. As a result the proposition of issuing the bonds was declared carried. In due time seven taxpayers of Ideal School District, No. 10, commenced a contest of the election alleging that the election had been conducted illegally and that many illegal votes were cast. They prayed that the officers of the district be enjoined from proceeding further and that the election be declared null and void. The contestees deny the illegality of the election. A hearing was duly had in district court and judgment entered sustaining the election. The contestants appealed to this court and ask for a trial de novo.

There are several issues but appellants summarize them under three points as follows:

"1. Permitting, or requiring, an unqualified voter to disclose how he voted.

"2. Permitting people, not qualified voters of the district, to vote.

"3. Permitting the voters of the First Addition to the Wold Addition in the townsite of Watford City to vote, claiming that that Addition was not legally annexed to the Ideal School District."

As to the first point the contestants and appellants presented 12 witnesses who were examined as to their legal qualifications to vote at that election. When the witnesses were examined as to how they voted at this election the court informed those whom it found to be qualified voters that they did not need to disclose that fact unless they wished to do so. In Torkelson v. Byrne, 68 N.D. 13, 276 N.W. 134, 113 A.L.R. 1213, this court held the qualified elector cannot be compelled to disclose for whom he voted. However, this privilege of secrecy is entirely a personal one and the voter himself may waive his privilege and testify for whom he voted.

Two voters were found to be disqualified to vote in this election. As to those two voters the court ruled they would have to disclose how they voted. In Hanson v. Village of Adrian, 126 Minn. 298, 148 N.W. 276, the court held:

"Having proven that the contestees voted without right, it is proper by competent evidence to ascertain how they voted, so as to purge the election of the illegal vote." See also Vallier v. Brakke, 7 S.D. 343, 64 N.W. 180; Powers v. Harten, 183 Iowa 764, 167 N.W. 693; Gardner v. Board of School District No. 6, 248 Mich. 134, 226 N.W. 895; Thompson v. Cihak, 254 Mich. 641, 236 N.W. 893.

The court was clearly right in requiring the disqualified voters to disclose how they voted and to deduct their votes from the total. As it happened one voted for and the other against the bonds so that the result was not changed, and more than

66⅔rds percent remained in favor of bonds.

On the next point the contestants and appellants object to the ruling of the court holding several of the challenged voters were qualified to vote. They especially question the votes of Earl Quale and his wife. Mr. Quale testified that he had a home in Watford City located in Ideal School District No. 10; that for more than a year while he had no work in Watford City he had been living temporarily in Arnegard, renting his home in Watford City because he needed the income from the rent to save his home from foreclosure; that even though his children went to school at Arnegard during that time he always intended to come back to make Watford City his permanent home; that he now has work there and is waiting until his tenant finds another place to move into, so that he can bring his family back to his home; that he never voted in Arnegard. Other witnesses were cross-examined as to their residence and disclosed that even though they temporarily worked on a farm or other places, they had a home in Watford City and always intended to return there and never voted anywhere else.

 Residence is the place where one lives when not called elsewhere for labor or other special purposes and to which on such occasions he returns. There can be only one residence and it cannot be lost until another is gained. It can be changed only by union of act and intent. Section 54–0126 NDRC 1943. The testimony of the witnesses whose residence in Watford City was questioned was that they had homes in Watford City and intended to return there and did return when occasion arrived. They had no intent of obtaining a residence anywhere else. Residence is a question of fact in which the intention of the party enters as an important element. Under the testimony those witnesses had a residence in Watford City of sufficient length of time to become qualified electors. The district court so found and the evidence supports such

finding. Northwestern Mortgage and Security Co. v. Noel Construction Co., 71 N.D. 256, 261; 300 N.W. 28; State ex rel. Sathre v. Moodie, 65 N.D. 340, 351, 258 N.W. 558; Anderson v. Breithbarth, 62 N.D. 709, 713, 245 N.W. 483; Burke County v. Oakland, 56 N.D. 343, 217 N.W. 643.

The final argument of contestants and appellants is that the First Addition to Wold's Addition to the townsite of Watford City was never legally annexed to Ideal School District No. 10, and that, therefore, all the residents of that First Addition who voted at this school election were illegal voters.

The evidence shows that Ideal School District No. 10, was a common school district originally organized in Ideal Township of McKenzie County, North Dakota. Ideal Township lies immediately west of Schafer Township, in said county and state, which has been organized as a common school district known as Schafer School District No. 8, McKenzie County, Watford City, North Dakota, a duly incorporated city, is divided by the civil township line between Ideal Township and Schafer Township. A part of the city lies in each township. The First Addition to Wold Addition to Watford City is a part of Watford City lying in Schafer Township contiguous to the other areas of Watford City also lying in Schafer Township which had previously been attached to the city and annexed to Ideal School District No. 10.

In regard to this annexation of the First Addition to Wold Addition to Watford City the evidence shows that in May 1954 a majority of the voters of that First Addition to Wold Addition to Watford City and of the remaining part of the city, petitioned the county commissioners of McKenzie County "that in accordance with the provisions contained in Section 15–2304 NDRC 1943, such First Addition to Wold Addition to the townsite of Watford City be annexed to Ideal School District No. 10." Said petition came before the Board of County Commissioners on July 6, 1954. No notice of hearing on that petition had been given.

The commissioners on that date, by resolution, granted the petition. No objection was made by anybody to that action of the commissioners, and no appeal taken therefrom.

■ The contestant and appellant contends that this action of the commissioners is void because no notice of the hearing of the commissioners was given.

Section 15–2304 NDRC 1943 reads as follows:

"When a city or village which is not organized into a special district is divided by a civil township line, the board of county commissioners, or when such city or village is divided by one or more county lines, the boards of county commissioners of all the counties affected, acting in joint session, when petitioned by a majority of the voters of each part of the city or village so divided, may annex to a common school district which includes a part of such city or village, that part or those parts thereof not included therein."

This section was first enacted as Section 40 of Chapter 62 S.L.1890 and was a part of Article 3 therein which first provided for the organization of school districts in the state. Originally it was not applied to a city divided by county lines. That addition is the only material change made in this section. It has always been included in the chapter on the organization of different kinds of school districts enacted to cover the circumstances of the localities involved and the purpose to be attained in each case.

Contestants and appellants cite Sections 15–2309 and 15–2310 NDRC 1943, providing for the formation of new school districts which were first enacted in 1911. That is a procedure based upon action not only by the county commissioners but the Superintendent of Schools and requires notice for hearing. In the decision of that question valuation and other matters are involved. He also cites Section 15–2308 NDRC 1943, providing for a change of district boundaries and consolidation. That cannot be done until submitted by the county Commissioners to the electors of the school districts affected. Appellants argue that Chapter 15–23 is a unit and that the notice provided for in Section 15–2310 applies to all sections of the chapter concerning the changes and boundaries for the establishment of new schools. The very sections he cites refute that theory. Each is a separate and independent method of changing the boundaries of school districts.

In the case of Bloomington School District v. Larson, 53 N.D. 594, 207 N.W. 650, this court held that Chapter 213, Laws 1917, now section 15–2308 NDRC 1943, relating to changing boundaries, and Chapter 197, S.L. 1919, now Section 15–2309, relating to the formation of common school districts "are separate and distinct legislative enactments relating to different subjects and enacted for different purposes; each applies to and covers the whole subject to which it relates, wholly unaffected by the provisions of the other."

In McDonald v. Hanson, 37 N.D. 324, 164 N.W. 8, two methods of organizing common school districts are considered. It is held that each is independent of the other.

Section 15–2304 NDRC 1943, was enacted to enable the people of a city divided by a civil township or county line to have a common school irrespective of that division. It provides for the majority of the people of the city affected to petition the county commissioners for the joining of the two parts lying in different townships into a common school district for the benefit of citizens of that city. The number of signatures required and the desirable purpose of the proposition was by the legislature deemed sufficient to authorize immediate action on the petition.

The contestants and appellants cite numerous cases from other states holding that notice was necessary in changing of school boundaries or establishment of new districts. An examination of such cases, however, shows that the statute governing each case required notice to be given.

The annexation of the First Addition to the Wold Addition to the townsite of Watford City to the Ideal School District No. 10, was carried out strictly in accordance with law. Clearly the qualified voters of that Addition were entitled to vote in the school election of Ideal School District, No. 10, on Oct. 14, 1955.

Allegations of misconduct of the election and violation of the Corrupt Practices Act art not borne out by the evidence.

The judgment of the district court is affirmed.

BURKE, C. J., and MORRIS, JOHNSON and SATHRE, JJ., concur.