Scott C. GEORGE, Plaintiff
and Appellee,

v.

David Allen COMPSON, Defendant
and Appellant.

Civ. No. 9267.

Supreme Court of North Dakota.

March 10, 1977.

Vogel, Vogel, Brantner & Kelly, Fargo, for plaintiff and appellee; argued by Kermit E. Bye, Fargo.

Thomas W. Robb, Asst. Atty. Gen., Bismarck, for Unsatisfied Judgment Fund, for defendant and appellant.

ERICKSTAD, Chief Justice.

We have before us in this case a single issue: Whether Scott C. George was, on August 30, 1974, a resident of the State of North Dakota, entitling him to the benefits of the North Dakota Unsatisfied Judgment Fund.

On August 30, 1974, George was injured when the automobile he was driving was involved in a collision with an uninsured automobile owned and operated by David Allen Compson. After due notice of a failure by Compson to answer a complaint served upon him by George, the Attorney General entered an appearance pursuant to Section 39–17–04, N.D.C.C. Upon stipula-tion of the parties appearing and establishment of liability to the court's satisfaction, a judgment was entered in Barnes County District Court for George against Compson in the sum of $10,000. Pursuant to Section 39–17–05, N.D.C.C., on June 29, 1976, the court ordered that $10,000 be paid to George out of the Unsatisfied Judgment Fund. The Assistant Attorney General for the Unsatisfied Judgment Fund (hereinafter the Fund) appeals from this order, maintaining that George was not a resident of North Dakota at the time of the collision giving rise to his injury and thus, under the provisions of Section 39–17–03, N.D.C.C., is ineligible to recover from the Fund.

In its findings of fact relating to the order appealed from, the court specifically found that George was a North Dakota resident on the date he was injured. This issue had been submitted to the court on the basis of affidavits—one by Thomas W. Robb, Assistant Attorney General for the Fund, and two by the claimant, George.

The affidavit of Mr. Robb, in pertinent part, reads:

"1. At the time of the accident, August 30, 1974, plaintiff was holding a Minnesota operators permit number G620–760–128–711.

"2. Plaintiff's vehicle was registered in Minnesota bearing Minnesota license plates number PFA 3388 for 1974.

"3. Plaintiff was apprehended May 24, 1975, on an open container charge and at that time he was carrying the same Minnesota drivers license and his car was registered in Minnesota bearing 1975 Minnesota license plates number FU 2911.

"4. At the time of the accident, Mr. George was registered as a non-resident student at the Valley City State Teachers College.

"5. Approximately two weeks after the accident, September 13, 1974, plaintiff petitioned for and was accepted as a North Dakota resident at said college.

"6. There is no record of Mr. George ever having paid North Dakota State income taxes."

Mr. George stated in his affidavit that in September, 1972, he moved to Valley City, North Dakota from Braham, Minnesota, and that he was employed in Valley City and also took classes at Valley City State College from that time until June, 1973. He stated that from that time until September, 1973, he traveled in the upper midwest installing silos, and that he returned to Valley City that September, at which time it became his specific intent to become a North Dakota resident. He said that he lived in Valley City from that time on, being enrolled at Valley City State College until June, 1974. He was employed in Valley City during the summer of 1974 and was so employed at the time of his injury on August 30th of that year.

George's affidavit stated that he requested residence status for tuition purposes prior to the collision, which status was granted when classes resumed a short time after the collision.[1] He said that he voted as a resident of North Dakota in 1972 and 1974 and filed State and Federal income tax returns as a North Dakota resident commencing in 1973. In a subsequent affidavit, he stated that the first affidavit was incorrect in that he did not file a North Dakota income tax return in some of the years mentioned, as he did not earn sufficient money to require it, but that he did file Federal returns as a North Dakota resident and believes he did receive a tax refund from North Dakota in one unspecified year. He also stated he was in possession of a North Dakota resident fishing license at the time of the injury. He admitted he had Minnesota license plates on his automobile on August 30, 1974, as he had purchased the car just two weeks before in Moorhead, Minnesota, and the accident occurred before he had an opportunity to register it in North Dakota. He admitted having a Minnesota driver's license at that time, but attributes this to inadvertence.

The controlling North Dakota statute on the issue of residence reads, in part:

"Every person has in law a residence. In determining the place of residence the following rules shall be observed:

"1. It is the place where one remains when not called elsewhere for labor or other special or temporary purpose, and to which he returns in seasons of repose;

"2. There can be only one residence;

"3. A residence cannot be lost until another is gained.

\* \* \* \* \* \*

"7. The residence can be changed only by the union of act and intent." § 54–01–26, N.D.C.C.

Various acts, including those mentioned by both parties in their affidavits, may be construed to establish or disprove residency. Many such acts and their ramifications are quite thoroughly discussed in *State v. Moodie*, 65 N.D. 340, 258 N.W. 558 (1935), a case of very great moment in this State, as it resulted in the removal of a Governor for failure to meet the residency requirements for that office. We note, for instance, that in *Moodie* the court placed great emphasis on the act of voting, though not deeming it conclusive on the issue of residence. *Id.* at 258 N.W. 563–564.

A person's residence is a question of fact. *State v. Moodie, supra.* The Fund recognizes this, but maintains in its brief that "The preponderance of the evidence indicates that Scott C. George was not a North Dakota resident at the time of his injuries . . . ."

■ Our standard of review of a district court's finding of fact is *not*, however, a redetermination of the weight of the evidence. Preponderance of the evidence is not what we seek to find. We are limited by Rule 52(a), N.D.R.Civ.P., to setting aside a finding of fact only when it is clearly erroneous. A reading of that Rule, which begins "In all actions tried upon the facts without a jury . . . ," indicates to us that it should apply to an order directed to the State Treasurer requiring him to pay

---

1. We note that the general statutory standards for determining residence are not applied in determining residence for tuition purposes in North Dakota. Section 15–10–19, N.D.C.C.

the amount of the judgment out of the Unsatisfied Judgment Fund pursuant to Section 39–17–05, N.D.C.C. *See* 5A Moore's Federal Practice ¶ 52.03[3], at 2665–2672 (2d ed. 1975).

We have often stated that a finding of fact is clearly erroneous only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made; and that the mere fact that the appellate court might have viewed the facts differently, if it had been the initial trier of the case, does not entitle it to reverse the lower court. *E.g., Mattco, Inc. v. Mandan Radio Ass'n, Inc.,* 246 N.W.2d 222 (N.D.1976); *Berry-Iverson Co. of North Dakota v. Johnson,* 242 N.W.2d 126 (N.D.1976); *Larson v. Larson,* 234 N.W.2d 861 (N.D.1975).

We conclude that the findings of the trial court are not clearly erroneous and accordingly that the claimant proved sufficient union of act and intent to establish his residence for the purposes of applying the Unsatisfied Judgment Fund to his claim.

For the reasons stated in this opinion, the order appealed from is affirmed.

VOGEL, PEDERSON, PAULSON and SAND, JJ., concur.