Tom DIETZ, Plaintiff and Appellant,

v.

CITY OF MEDORA, Rod Tjaden, and William Connell, Defendants and Appellees.

Civ. No. 10297.

Supreme Court of North Dakota.

April 21, 1983.

Thomas M. Disselhorst, Bismarck, for plaintiff and appellant.

Ronald A. Reichert of Freed, Dynes, Reichert & Buresh, Dickinson, for defendant and appellee City of Medora.

Paul G. Kloster of Mackoff, Kellogg, Kirby & Kloster, Dickinson, for defendants and appellees Rod Tjaden and William Connell.

PAULSON, Justice.

This is an appeal by Tom Dietz from a judgment dismissing his action against the City of Medora; Rod Tjaden, the mayor of Medora; and William Connell, a member of the Medora City Council. Dietz contends that Tjaden and Connell are not residents of Medora and, therefore, are not qualified to serve as city officers. We affirm the dismissal.

Tjaden is a division manager employed by the Gold Seal Company to oversee Gold Seal's property and tourist facilities in Medora. When in Medora, Tjaden lives in a house provided by the Gold Seal Company. During September through March, Tjaden spends much of his time traveling for business purposes.

Connell is the majority owner of the Hitching Post, a Medora business which is open throughout the year. When in Medora, Connell lives in the living quarters above the family business.

Recently Tjaden and Connell purchased homes in Bismarck and Dickinson respectively. Tom Dietz, a resident and elector of the City of Medora, contends that Tjaden and Connell are no longer residents legally qualified to hold positions as governing officers of the City of Medora. The trial court heard evidence concerning Tjaden's and Connell's residences and then dismissed Dietz's action. In his oral opinion, the trial judge stated that he found "significant and substantial evidence" supporting Tjaden's and Connell's declared intentions to retain their residency and their status as residents of the city of Medora.

Section 40–13–01 of the North Dakota Century Code provides that an officer in a municipality must be "a qualified elector of the municipality and . . . a resident thereof".[1] Similarly, § 40–08–05, N.D.C.C., provides that an alderman of a city council must be "a qualified elector of and a resident within the city".

According to the North Dakota Constitution, a qualified elector is a "citizen of the United States, who has attained the age of eighteen years and who is a North Dakota resident". N.D. Const. art. II, § 1. *See also* § 16.1–01–04(1), N.D.C.C. A qualified elector thus is a person legally qualified to vote because he meets age and residency requirements. In the case at hand, Tjaden and Connell, as city officers, are required by

---

1. We note that § 40–08–14, N.D.C.C., provides only that a mayor of a city "shall be a qualified elector within the city". We do not find it necessary today to discuss the possible conflict between §§ 40–08–14 and 40–13–01, N.D.C.C., because of our determination that Mayor Tjaden is both a resident and a qualified elector of the City of Medora.

statute to be actual residents of the City of Medora and are each required to meet the legal residency requirements of a qualified elector in the city. *See Bergstrom v. Bergstrom,* 271 N.W.2d 546, 550 (N.D.1978) [court recognizes distinction between legal residence and actual physical presence in child custody case]; *Anderson v. Breithbarth,* 62 N.D. 709, 714, 245 N.W. 483, 485 (1932) [court recognizes distinction between actual residence and legal or technical residence in school residency case].

■ We will first consider the requirement that Tjaden and Connell be actual "residents" of the City of Medora. Title 40, N.D.C.C., does not define "resident". *Cf.* § 20.1–01–02(4), N.D.C.C. [resident defined for matters involving game, fish, predators, and boating]; § 37–24–01(3), N.D.C.C. [resident defined for educational assistance to veterans]; § 37–25–02(7), N.D.C.C. [resident defined in the Vietnam Conflict Veterans' Adjusted Compensation Act]; § 57–38–01(10), N.D.C.C. [resident defined for state income tax purposes]. Although the word "resident" may have many meanings to suit different purposes, *Goodsell v. State Automobile and Casualty Under.,* 261 Iowa 135, 153 N.W.2d 458, 460 (1967), the word "resident" in §§ 40–08–05 and 40–13–01, N.D.C.C., is to be understood in its ordinary sense. *See* § 1–02–02, N.D.C.C. Webster's Third New International Dictionary 1931 (unabr.1971) defines the word "resident" as "one who resides in a place: one who dwells in a place for a period of some duration— often distinguished from *inhabitant*". Black's Law Dictionary 1177 (5th ed. 1979) states that the "word 'resident' when used as a noun, means a dweller, habitant or occupant; one who resides or dwells in a place for a period of more, or less, duration . . .". *See also Staton v. Hutchinson,* 370 So.2d 106, 109 (La.Ct.App.1978). A person may have two or more actual residences, as distinguished from his single legal residence. *State v. Moodie,* 65 N.D. 340, 356, 258 N.W. 558, 565 (1935). *Accord Walker v. Harris,* 398 So.2d 955, 958 (Fla.Dist.Ct.App. 1981); *State v. Jones,* 202 Neb. 488, 275 N.W.2d 851, 853 (1979).

■ In the instant case both Tjaden and Connell have two actual residences, Tjaden in Medora and in Bismarck and Connell in Medora and in Dickinson. Tjaden and Connell are "residents" of Medora for purposes of §§ 40–08–05 and 40–13–01, N.D.C.C., if they live, reside, or dwell in Medora. Both have living quarters in Medora where they keep personal possessions, clothing, furniture, and items of sentimental value. These living quarters are the dwelling places of Tjaden and Connell whenever they are in Medora. It is not necessary that Tjaden and Connell spend every day of the year in Medora to be "residents thereof".

The determination of whether or not an individual is a resident is a question of fact to be reviewed according to Rule 52(a) of the North Dakota Rules of Civil Procedure: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *See generally Hoge v. Burleigh Cty. Water Management Dist.,* 311 N.W.2d 23, 28 (N.D.1981). We hold that the trial court's finding was not clearly erroneous when it found that Tjaden and Connell are actual residents of the City of Medora.

■ We next consider the statutory requirement that Tjaden and Connell have legal residences in the City of Medora for the purpose of voting eligibility. The rules to be used to determine legal residence for voting eligibility (according to § 16.1–01–04(3), N.D.C.C.) are set forth in § 54–01–26, N.D.C.C., and provide, in pertinent part, as follows:

"1. It is the place where one remains when not called elsewhere for labor or other special or temporary purpose, and to which he returns in seasons of repose.

"2. There can be only one residence.

"3. A residence cannot be lost until another is gained.

. . . . .

"7. The residence can be changed only by the union of act and intent."

Every person has only one legal residence, as distinguished from the possibility of several actual physical residences. *See* § 54–01–26, N.D.C.C.; *Wehrung v. Ideal School District No. 10,* 78 N.W.2d 68, 70 (N.D. 1956); *Moodie, supra* 258 N.W. at 563; 25 Am.Jur.2d *Elections* § 66. An individual does not lose his legal residency for voting eligibility solely because of temporary absences from the area. N.D. Const. art. II, § 1; *City of Enderlin v. Pontiac TP., Cass County,* 62 N.D. 105, 242 N.W. 117, 121 (1932); 25 Am.Jur.2d *Domicil* § 31.

 A legal residence is the place where an individual has established his home, where he is habitually present, and which he intends to return to when he is away for business or pleasure. *Nelson v. Gass,* 27 N.D. 357, 146 N.W. 537, 543 (1914). *See* § 54–01–26(1), N.D.C.C.; *Wehrung, supra* 78 N.W.2d at 70. There is a legal presumption against a change of legal residence, or domicile, § 31–11–03(40), N.D.C.C.; and the burden of proving the change of legal residence is on the person alleging the change, in this case, Dietz. *Mittelstadt v. Bender,* 210 N.W.2d 89, 93 (N.D.1973); *Northwestern Mortgage & S. Co. v. Noel Const. Co.,* 71 N.D. 256, 300 N.W. 28, 32 (1941); *Moodie, supra* 258 N.W. at 564.

Dietz must prove three elements to show Tjaden's and Connell's legal residences have changed—(1) abandonment of the old domicile, (2) actual removal to a new domicile, and (3) intent to change from the old to the new and to remain at the new domicile. *Northwestern Mortgage, supra* 300 N.W. at 31; *Moodie, supra* 258 N.W. at 564. Although a person's intent cannot easily be analyzed, *Jones, supra* 275 N.W.2d at 853, intent is an important consideration when determining whether or not a legal residence has changed. *Moodie, supra* 258 N.W. at 564; *Nelson, supra* 146 N.W. at 543; 25 Am.Jur.2d *Elections* § 66. Both Tjaden and Connell testified that they intended to remain legal residents of the City of Medora. A person's declaration of intent is significant, *Walker, supra* 398 So.2d at 958; however, inconsistent acts can negate declared intent. *Moodie, supra* 258 N.W. at 563; *Nelson, supra* 146 N.W. at 543.

██ ██ All of the facts and circumstances in the life of an individual may be used when considering the factual issue of whether or not there has been a change of legal residence. *Schillerstrom v. Schillerstrom,* 75 N.D. 667, 32 N.W.2d 106, 115 (1948); *Moodie, supra* 258 N.W. at 563. As we noted in *Moodie, supra* 258 N.W. at 564:

> "the difficulties ... with this question are due not so much to any obscurity or uncertainty in the law as to the infinite variety of facts and circumstances which have to be considered in its application to individual cases."

Evidence that has been considered by other courts regarding the issue of legal residence includes declarations, payment of taxes, licenses, business connections, property·ownership, burial plans, church membership, and membership in clubs. *See* 25 Am. Jur.2d *Domicil* §§ 92–100. One court found it significant that an individual retained a dwelling place in a locality showing that he intended to return to that locality and thus he was not abandoning his legal residence there. *Moore v. Tiller,* 409 S.W.2d 813, 816 (Ky.Ct.App.1966). Legal residence, determined according to the rules in § 54–01–26, N.D.C.C., is a question of fact to be determined by the factfinder and to be reviewed according to the "clearly erroneous" standard of Rule 52(a), N.D.R.Civ.P. *See George v. Compson,* 251 N.W.2d 743, 745 (N.D.1977); *Wehrung, supra* 78 N.W.2d at 70; *Moodie, supra* 258 N.W. at 563.

 During the trial the judge heard the following evidence concerning Tjaden's legal residency: (1) he votes in Medora; (2) he belongs to Medora clubs and advisory councils and supports a church in Medora; (3) his will, checks, income tax forms, passport, and car registration list Medora as his address; (4) he has a telephone in Medora and receives newspapers in Medora; (5) he is provided a home in Medora by his employer at which he keeps personal possessions; and (6) it is his declared intent to be a legal resident of the City of Medora. The trial judge also heard evidence regarding Tjaden's connections with the City of Bis-

marck. Tjaden owns a home in Bismarck and his children attend the Bismarck public schools. Tjaden belongs to a church in Bismarck, banks in Bismarck, consults with Bismarck doctors, receives newspapers in Bismarck, has a telephone in Bismarck, and belongs to clubs in Bismarck.

The judge heard similar testimony concerning Connell: (1) Connell has declared his intent to be a legal resident of Medora; (2) he lists Medora as his address on his checks, income tax forms, driver's license, car registration, and life insurance policy; (3) he votes in Medora, banks in Medora; and has purchased a cemetery plot in Medora; (4) he owns a business in Medora; (5) he has living quarters above the business that contain personal belongings; (6) he is involved in community activities in Medora and tried to purchase a home there; and (7) he receives mail in Medora. However, Connell has purchased a home in Dickinson. He also receives mail in Dickinson, banks in Dickinson, and has a telephone in Dickinson.

The trial court considered this evidence, along with other evidence, and concluded the following:

"By those facts and others, the Court finds that neither Defendant Tjaden or Connell ceased in any manner to be a resident of the City of Medora. They have been at all times residents of Medora, since their residency was established as already found. They have not abandoned such residency at anytime from its establishment to and including this date of trial. They have not forfeited it in any manner. They have not performed any acts or conduct which negate or conflict with their stated intention to be residents of Medora. On those findings, the Court concludes that they are eligible to hold the offices in the Medora government which they presently hole [sic] by election of the people of that City. The Complaint accordingly will be dismissed in all respects."

We have reviewed the trial court's findings and do not find that they are clearly erroneous.

Tjaden and Connell requested just damages, double costs, and attorney fees on appeal, according to Rule 38 of the North Dakota Rules of Appellate Procedure. To award these costs we must find that Dietz's appeal is frivolous; however, we do not find that this appeal is frivolous.

We affirm the trial court's dismissal of Dietz's action, and we deny Tjaden's and Connell's requests for the costs of this appeal.

ERICKSTAD, C.J., and PEDERSON and VANDE WALLE, JJ., concur.

SAND, Justice, dissenting.

I respectfully dissent from the rationale and conclusions reached in *Dietz v. City of Medora* for the reasons hereinafter set forth.

The principal issue is whether or not Rod Tjaden and William Connell are eligible for the offices of mayor and city alderman, respectively. The question can be more refined by stating: Do these individuals meet the qualifications set out by law, including the North Dakota Constitution?

North Dakota Century Code § 40–08–05 provides that:

"No person shall be eligible to the office of alderman if he:

1. Is not a qualified elector *of* and resident *within* the ward for which he was elected, except that in cities where aldermen are elected at large, he shall be a qualified elector *of* and a resident *within* the city . . . ." [Emphasis added.]

This Court, in *State v. Blaisdell*, 18 N.D. 31, 119 N.W. 360 (1909), held that the word "electors" as used in the Constitution means all persons possessing the qualifications as to *residence*, age, and citizenship, as prescribed by § 121 of the North Dakota Constitution. Section 121 has been replaced by Article II, § 1, which states in part:

"Every citizen of the United States, who has attained the age of eighteen years and who is a North Dakota resident, shall be a qualified elector. When an elector moves within the state, he shall

be entitled to vote in the precinct from which he moves until he establishes voting residence in another precinct. The legislative assembly shall provide by law for the determination of residence for voting eligibility, other than physical presence. No elector shall lose his residency for voting eligibility solely by reason of his absence from the state."

By applying the definition of an "elector," it becomes obvious that NDCC § 40–08–05, as enacted by the Legislature, not only requires an alderman to be a qualified elector of but also requires an alderman to be a resident within the ward or city, as the case may be. Furthermore, the Legislature did not merely require that the alderman must be a resident of the city, but required the alderman to be a resident *within* the ward or the city, as the case may be.

This Court has in numerous cases, and as recently as *Rothe v. S–N–Go Stores, Inc.*, 308 N.W.2d 872 (N.D.1981), held that in construing statutory provisions every paragraph, phrase and word must be given full consideration. In interpreting and construing a statute we must construe words and phrases according to the context and the rules of grammar. Technical words and phrases shall be construed according to their appropriate meaning or definition. NDCC § 1–02–03. Apart from the statutory provision, we have a rule that in effect states that the true and full meaning of the words and phrases can only be determined from the context in which they are found.

Maxims of jurisprudence, as found in NDCC § 31–11–05(23) states: "The law neither does nor requires idle acts." Paraphrasing this concept, we can assume that the Legislature does not perform an idle act and did not perform an idle act when it required an alderman to be an elector of and a resident within the ward.

A brief comparison of other legislative provisions regarding qualifications of and eligibility to certain offices will shed some light. Section 44–01–01, NDCC, as to all officers, provides:

"Every elector is eligible to the office for which he is an elector, except when otherwise specially provided. No person is eligible who is not such an elector."

Section 40–08–05, NDCC, specifically provides otherwise. Also, NDCC § 40–13–01 applying to all municipal officers, provides:

"No person shall be eligible to hold an elective municipal office unless he is a qualified elector of the municipality and unless he has been a resident thereof for at least nine months preceding the election. . . ."

Both NDCC §§ 44–01–01 and 40–13–01 are general provisions, whereas § 40–08–05 is a specific provision which prevails over the general. NDCC § 1–02–07.

Significantly, the Legislature has used a different standard for some other offices. As an example, NDCC § 11–10–04 provides as follows regarding county officers:

"Except as otherwise specifically provided by the laws of this state, a county officer must be a qualified elector in the county in which he is chosen or appointed, and a county commissioner must be a qualified elector in the district from which he is chosen."

Also, regarding township officers, NDCC § 58–05–01 states:

"Every person qualified to vote at a township meeting is eligible to any township office."

A comparison of these provisions with the provisions of NDCC § 40–08–05 clearly demonstrates that the Legislature has imposed an additional qualification for alderman in a council form of government—that of being a *resident within* the ward or city, as the case may be. This additional requirement cannot be overlooked or disregarded in interpreting or construing a statute. If it were overlooked, it would amount to saying that the Legislature performed an idle act.

As stated earlier, the term "elector" already includes the requirement that the person be a resident, so consequently there would have been no need to add the further qualification "resident within" if this is all

that was intended to be accomplished. By using the two terms it becomes clear that the Legislature intended the alderman to be a resident within the ward and not merely to have a "voting residence" or, as the term is sometimes used, "legal residence." I am convinced that the Legislature here intended the alderman to be an actual resident, as distinguished from a legal resident or a voting resident.

Regarding the qualifications of a mayor, NDCC § 40–08–14 provides that:

"The chief executive officer of the city is the mayor. He shall be a qualified elector within the city and shall hold his office for four years and until his successor is elected and qualified.

Significantly, the term "and resident within" is not contained in this section.

My interpretation of the statutory provisions leads me to the conclusion that the Legislature used different language clearly indicating a different result. Consequently, the mayor need only be an elector within the city.

I also disagree that the determination of whether or not an individual is a resident is a question of fact. Initially, a determination as to what the facts are must be made, but in applying the facts to the law, either statutory or constitutional, it becomes a conclusion of law. *Slope County v. Consolidation Coal Co.*, 277 N.W.2d 124 (N.D.1979). *See also, Miller v. Rambousek*, 331 N.W.2d 548 (N.D.1983); *Dayap v. Kupperion*, 331 N.W.2d 22 (N.D.1983). In this particular instance there is no dispute as to the facts. The only dispute is on the application of the law to the facts. Consequently, this does not involve a finding of fact or the application of the clearly erroneous rule under Rule 52(a), North Dakota Rules of Civil Procedure.

In my application of the law, I would only affirm the decision of the trial court as to the qualification of the mayor, but not as to the office of councilman or alderman.