**In re Rita Marie MURPHY, Debtor.**

**No. 02–31686.**

United States Bankruptcy Court, D. North Dakota.

April 8, 2003.

---

**2.** $320.00 per week × 52 weeks ÷ 12 months = $1,386.66.

Mark V. Larson, Larson Law Firm, P.C., Minot, ND, for Debtor.

Michael L. Wagner, Bismarck, ND, trustee.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This matter is before the Court on the objection of Beal Bank/LLP Mortgage, Ltd., to the Debtor's claimed homestead exemption.

On October 24, 2002, Debtor Rita Marie Murphy filed a voluntary chapter 7 bankruptcy petition. On Schedule A of the petition, the Debtor claimed as exempt residential real property located in Berthold, North Dakota. Beal Bank objected to the claimed homestead exemption, asserting that under section 47–18–01 of the North Dakota Century Code, a debtor must reside upon the premises in order to claim a homestead exemption in property.

The matter was heard by video conference on March 25, 2003.

Prior to this school year, the Debtor was a German teacher for the Minot Public School District. On July 25, 2002, the Debtor moved to La Crosse, Wisconsin, to pursue a Master of Education–Professional Development (MPD) at the University of Wisconsin–La Crosse (UW–La Crosse). The Debtor introduced the following into evidence regarding her continuing education at UW–La Crosse: a letter written by the principal of Minot High School's Central Campus to UW–La Crosse supporting the Debtor's application for admission; a letter the Debtor wrote to Minot Public Schools requesting educational leave to attend UW–La Crosse; and a response letter written by the assistant superintendent of Minot Public Schools to the Debtor stating that her request for continuing education leave for the 2002–2003 and 2003–2004 school years was approved; a letter from the UW–La Crosse notifying the Debtor of her acceptance for admission for the 2002 fall semester to the MPD program.

At some unspecified time approximate to the Debtor's move to La Crosse, she put her homestead on the market because to cover her expenses, she needed to either sell it or rent it out. She was unable to sell the homestead, however, because the State of North Dakota is holding up any sale pending a highway construction project that would affect the property. Although she considered having two of her college-age children stay in the property while she attended school, she decided such an arrangement would not be a good idea. The property has a well and a septic tank and needs to be occupied because otherwise the "sludge would solidify." Thus, she rented the property to an individual under a one-year lease beginning on July 25, 2002, and he takes care of the property in her absence. She stated that she plans to renew the lease agreement in July 2003, and the current renter does not have a purchase option. The Debtor continues to pay real estate taxes and insurance on the property, and some of her personal possessions remain in the property.

The Debtor introduced additional documents into evidence to support her claim that she has not abandoned her homestead: a letter from the payroll and benefits clerk of Minot Public Schools stating that her medical and dental benefits would continue through Minot Public Schools; a checking account statement mailed to her homestead showing that she still receives mail there; and a copy of her 2002 North Dakota income tax return.

Angelina Edison, a teacher at Minot Public Schools, testified that she has assumed teaching the Debtor's German classes until she returns. Although Edison taught one German class prior to the Debtor's leave, she primarily taught English. It is Edison's understanding that she will return to teaching primarily English classes when the Debtor returns. Edison also testified that she relies on the Debtor a great deal for advice in teaching the German classes and that the Debtor has remained active in planning trips and events for the German Club. In fact, Edison and the Debtor are planning to take students on a trip to Germany in the summer of 2004.

Beal Bank argued that the Debtor's conduct in putting the property up for sale is objective evidence of her intent to abandon the homestead, and that only a factor outside of her control—the state highway project—prevented her from selling the homestead. Beal Bank further argued that as a result, the Debtor should be deemed to have abandoned the homestead and therefore be precluded from claiming the property as exempt.

At the time a debtor files a Chapter 7 petition, a bankruptcy estate is created which is comprised of all of the debtor's legal and equitable interests in property. 11 U.S.C. § 541(a)(1). Section 541(a)(1) of the Bankruptcy Code is a broad provision which encompasses all apparent interest of the debtor. *Armstrong v. Peterson (In re Peterson)*, 897 F.2d 935 (8th Cir.1990). Section 522(b)(2)(A) permits a debtor to exempt from the bankruptcy estate any property that is exempt under federal, state, or local law applicable on the date of the petition filing. 11 U.S.C. § 522(b)(2)(A). However, North Dakota is among the majority of states that have chosen to "opt out" of the federal exemption scheme and limit its residents to the exemptions allowable under North Dakota law. *See* N.D.C.C. § 28–22–17.

▮ Section 47–18–01 of the North Dakota Century Code defines the limits of the homestead exemption, in relevant part:

> The homestead of any person, whether married or unmarried, residing in this state shall consist of the land upon which the claimant resides, and the dwelling house on the land in which the homestead claimant resides, with all its appurtenances, and all other improvements on the land, the total not to exceed eighty thousand dollars in value, over and above liens or encumbrances or both.

N.D.C.C. § 47–18–01. The intent of the homestead exemption is to place designated homestead property out of the reach of creditors while it is occupied as a home. *Farstveet v. Rudolph*, 2000 ND 189, ¶ 11, 630 N.W.2d 24 (2001).

▮ It is axiomatic that the homestead statute, as with all exemption statutes, is to be accorded a liberal interpretation. *In re Hankel*, 223 B.R. 728, 731 (Bankr. D.N.D.1998). However, the right to claim the homestead exemption is not without

limits. *Farstveet*, 2000 ND 189, ¶ 11, 630 N.W.2d 24.

▮ In 1907, the North Dakota Supreme Court held that a person is not entitled to claim property exempt unless he or she is "residing thereon." *Smith v. Spafford*, 16 N.D. 208, 112 N.W. 965, 967 (1907). The Supreme Court carefully explained, however, that "residence" is not construed to mean actual and continuous residence on the homestead. Rather, temporary absence and removal from the property do not defeat the right to claim the homestead as exempt. In fact, even an absence for years, with continuous intention of returning to it, gives creditors no right to the land. *Id.* Ten years later the Supreme Court stated that a residence is the place where a person resides or stays with some degree of permanency: "The act of residing, abiding or dwelling in a place from some continuance of time; the place where one resides; an abode, a dwelling or habitation, especially a settled or permanent home or domicile; the place where anything rests permanently." *Krumenacker v. Andis*, 38 N.D. 500, 165 N.W. 524, 526 (1917). In *State v. Moodie*, the Court further developed the meaning of a residence:

> [E]very person has in law a residence where such person remains *when not called elsewhere for labor or other special or temporary purpose and to which he returns in seasons of repose;* that he can have but one residence, and the one residence to which he is entitled he cannot lose until another is gained; that is, leaving his place of residence is not an abandonment unless he establishes another, and a new residence can only be established by the union of act and intent; that is, there must be an actual change of residence, together with an intention to make such change.

*State ex rel. Sathre v. Moodie*, 65 N.D. 340, 258 N.W. 558, 563 (1935) (emphasis added.) However, although a person may have only one legal residence, he or she may have two or more actual residences. *Dietz v. City of Medora*, 333 N.W.2d 702, 704 (N.D.1983). For example, In *Dietz*, the North Dakota Supreme Court determined that one person had actual residences in both Medora and Bismarck, and another person had actual residences in both Medora and Dickinson. *See id.*

A legal residence is the place where an individual has established his or her home, where he or she is habitually present, and where he or she intends to return after being away for business or pleasure. *Id.* at 705. There is a legal presumption against a change of legal residence, and the burden of proving the change of legal residence is on the person alleging the change, in this case Beal Bank. *See id.* Beal Bank must prove three elements to show the Debtor's legal residence has changed: 1) abandonment of the old domicile, 2) actual removal to a new domicile, and 3) intent to change from the old to the new and to remain at the new domicile. *See id.* Intent is an important consideration when determining whether a legal residence has changed. *Id.* However, although a person's declaration of intent is significant, inconsistent acts can negate declared intent. *Id.* All of the facts and circumstances in the life of an individual may be considered when determining the factual issue of whether there has been a change of legal residence. *Id.* Evidence that has been considered by other courts regarding the issue of legal residence includes declarations, payment of taxes, licenses, business connections, property ownership, burial plans, church membership, and membership in clubs. *Id.* (citing 25 Am.Jur.2d *Domicile* §§ 92–100).

The first element of showing the Debtor's legal residence has changed requires a determination of abandonment. *See Dietz*, 333 N.W.2d at 704. This determination is made upon consideration of all the facts and circumstances presented. *Id.* at ¶ 9. In *Farmers State Bank v. Slaubaugh*, 366 N.W.2d 804, 808 (N.D.1985), the North Dakota Supreme Court outlined the law concerning the abandonment of a homestead:

1. The law does not favor the abandonment of the homestead and the statutes must be liberally construed for the protection thereof.

2. When a homestead status of property has been established, the burden of proving its abandonment, by the clear and convincing preponderance of the evidence, is on the party who alleges such abandonment.

3. To constitute an abandonment of homestead rights removal from the premises must concur with an intention to discontinue their use as a home.

*Slaubaugh*, 366 N.W.2d at 808.

The primary element of abandonment is intent. *Farstveet*, 2000 ND 189, ¶ 13, 630 N.W.2d 24. To find abandonment, a court must determine that the debtor has voluntarily departed from the homestead property without the intent to return and occupy it as a home. *Id.* A debtor's subjective intent is not a reliable indicator, and a court looks to the debtor's conduct to determine the objective intent. *Id.* Although physical absence, by itself, does not constitute abandonment, it is evidence to consider in determining abandonment. *Id.* at ¶ 14.

A debtor's exemptions are determined as of the time of the bankruptcy petition filing. *In re Peterson*, 897 F.2d at 937. Accordingly, courts focus only on the

law and facts as they exist on the date of filing the petition. *Id.*

The Debtor filed her bankruptcy petition on October 24, 2002. The Court heard the following evidence concerning Murphy's legal residence as of that date: 1) she owns the claimed homestead and provides insurance for it; 2) she keeps personal possessions in the claimed homestead; 3) she pays property and income taxes in North Dakota; 4) she receives mail at her claimed homestead; 5) she maintains medical and dental insurance through the Minot Public Schools; 6) she is on educational leave from her employment with the Minot Public Schools; 7) she remains involved with the German classes that are temporarily taught by another teacher; 8) she remains involved in the planning of activities and trips of the German Club; and 9) she testified as to her intent to return to her claimed homestead. On the other hand, the Debtor also has connections with La Crosse: She rents an apartment there, has personal possessions there, attends school there, and receives mail there.

The Court acknowledges that the North Dakota Supreme Court has stated that there is not more convincing proof that abandonment has occurred than the sale of the homestead. *Farstveet,* 2000 ND 189, ¶ 16, 630 N.W.2d 24. In this case, although the Debtor testified that she put her property up for sale or rent—and that a sale might have occurred but for the state highway project—Beal Bank has not proven by the clear and convincing preponderance of the evidence that the Debtor's move from the premises to La Crosse coincided with her intention to discontinue her use of the property as a home. *See Slaubaugh,* 366 N.W.2d at 808. Moreover, the Court is not convinced that the Debtor departed from the homestead property without the intent to return and occupy it as a home. *See Farstveet,* 2000 ND 189, ¶ 13, 630 N.W.2d 24. Thus, Beal Bank failed to prove the Debtor abandoned her homestead.

Beal Bank also failed to convince the Court that it met the third element necessary for proving that the Debtor's legal residence has changed—that the Debtor intended to change from the old domicile to the new and to remain at the new domicile. *See Dietz,* 333 N.W.2d at 704. In fact, the Debtor provided substantial evidence supporting her stated intention *not* to remain in La Crosse. Beal Bank did not overcome this evidence, and it therefore also failed to prove this element.

Based on the foregoing, Beal Bank's objection to Debtor Rita Marie Murphy's claimed homestead exemption is overruled. The exemption is allowed.

**SO ORDERED.**