# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2020 ND 203

Kenton Onstad, individually in his
capacity as a resident and elector of
North Dakota District 4 and as chair of
the District 4 Democratic-NPL Party,                                    Petitioner

       v.

Alvin Jaeger, in his capacity as
North Dakota Secretary of State, and
Terry B. Jones,                                                        Respondents

## No. 20200251

Petition for Writ of Mandamus.

WRIT DENIED.

Per Curiam.

McLain J. Schneider, Fargo, ND, for petitioner.

Matthew A. Sagsveen, Solicitor General, Bismarck, ND, for responent Alvin
Jaeger, in his capacity as North Dakota Secretary of State.

Monte L. Rogneby, Bismarck, ND, for respondent Terry B. Jones.

**Per Curiam.**

[¶1]   Kenton Onstad, individually in his capacity as a resident and elector of North Dakota District 4 and as chair of the District 4 Democratic-NPL Party, petitioned for a writ of mandamus to compel Secretary of State Alvin Jaeger to remove Terry B. Jones from the general election ballot as a candidate for the House of Representatives from District 4. Onstad argues Jones is constitutionally ineligible to hold the office of representative from District 4 because he will not have been a North Dakota resident for one year immediately prior to the November general election. We deny Onstad's petition for a writ of mandamus.

I

[¶2] Jones represented District 4 in the North Dakota House of Representatives in the 2017 and 2019 legislative sessions. Jones was placed on the 2020 primary election ballot as a North Dakota Republican Party candidate for North Dakota House of Representatives from District 4. He was nominated in the primary election to advance to the 2020 general election as a candidate for representative from District 4.

[¶3]   On September 8, 2020, Onstad sent Jaeger a letter requesting removal of Jones' name from the general election ballot, alleging Jones does not meet residency requirements for election as a member of the North Dakota House of Representatives. Onstad also asserted Jones should be removed from his current seat in the state legislature. Onstad claimed a candidate must have been a resident in North Dakota for one year immediately prior to the general election to be eligible as a representative in the state legislature. Onstad alleged Jones does not reside in North Dakota; he maintains a residence in Wyoming; he is the registered agent for Jones Brothers Enterprises, LLC, which is a Wyoming limited liability company; the company's 2020 annual report lists Jones as the registered agent with a mailing address in Wyoming;

1

and a person may not serve as a registered agent for a Wyoming business unless they reside in Wyoming.

[¶4] In a letter dated September 9, 2020, Jaeger denied Onstad's request. Jaeger stated he was unable to comply with Onstad's request and explained N.D. Const. art. IV, § 12 states that each house is the judge of the qualifications of its members. Jaeger also explained, "Additionally, last Friday I forwarded to the County Auditors my certification of the ballot for the November General Election and the preparation of the ballot is well underway."

[¶5] On September 16, 2020, Onstad petitioned this Court for a writ of mandamus directing Jaeger to remove Jones' name from the 2020 general election ballot. Onstad contends Jones has not been a North Dakota resident for one year immediately prior to the November 3, 2020 general election, and therefore he is constitutionally ineligible to hold the office of representative in the state legislature.

[¶6] Following oral argument, this Court ordered the district court to hold an evidentiary hearing and make findings of fact on whether Jones will have been a North Dakota resident for one year preceding the 2020 general election. On September 22, 2020, the district court held an evidentiary hearing. After the hearing, the court found Jones will have been a North Dakota resident for more than one year at the time of the general election.

II

[¶7] Article VI, § 2, of the North Dakota Constitution gives this Court the authority to issue, hear, and determine original and remedial writs as may be necessary to properly exercise our jurisdiction. Our authority is discretionary and may not be invoked as a matter of right. *Bolinske v. Jaeger*, 2008 ND 180, ¶ 4, 756 N.W.2d 336. "[T]he power to exercise our original jurisdiction extends only to those cases where the questions presented are *publici juris* and affect the sovereignty of the state, the franchises or prerogatives of the state, or the liberties of its people." *Berg v. Jaeger*, 2020 ND 178, ¶ 7, 948 N.W.2d 4 (quoting *Riemers v. Jaeger*, 2018 ND 192, ¶ 5, 916 N.W.2d 113). "The interest of the

2

state must be primary, not incidental, and the public must have an interest or right that is affected." *Berg*, at ¶ 7 (quoting *Riemers*, at ¶ 5).

[¶8]  A writ of mandamus may be issued to compel the performance of an act which the law specifically requires a state official to perform. N.D.C.C. § 32-34-01. "A petitioner for a writ of mandamus must show a clear legal right to performance of the act sought to be compelled and must establish no plain, speedy, and adequate remedy exists in the ordinary course of law." *Berg*, 2020 ND 178, ¶ 9 (quoting *Riemers*, 2018 ND 192, ¶ 7). The law must require an act to be done to be enforceable by mandamus. *Berg*, at ¶ 9.

III

[¶9]   Jaeger argues he does not have statutory authority to correct an alleged ballot error after an election has begun. He contends, even if this Court adjudicates Jones' eligibility and determines he is not eligible, the provisions of N.D.C.C. § 16.1-01-08 do not apply after the ballot has been printed and the election has begun. He essentially argues the petition should be dismissed because the issues are moot.

[¶10] Generally this Court does not address issues that are moot:

> Courts will not issue advisory opinions and will dismiss an appeal as moot if the issues become academic and there is no actual controversy left to be determined. No actual controversy exists if subsequent events make it impossible for a court to provide effective relief, or if the lapse of time has made the issue moot. Courts will determine a moot issue rather than dismiss an appeal, however, if the controversy is one of great public interest and involves the authority and power of public officials, or if the matter is capable of repetition, yet evading review.

*Nelson v. Nelson*, 2020 ND 130, ¶ 7, 944 N.W.2d 335 (quoting *In re Estate of Shubert*, 2013 ND 215, ¶ 12, 839 N.W.2d 811).

[¶11] Section 16.1-01-08, N.D.C.C., states in relevant part:

3

The secretary of state shall thoroughly investigate, when the matter comes to the secretary of state's attention, any of the following:

>  1. Any error or omission *which has occurred* or is about to occur in the placing of any name on an official election ballot.
>  2. Any error *which has been* or is about to be committed in printing the ballot.

. . . .

If required, the secretary of state shall order the officer or person charged with such error, wrong, or neglect to correct the error, desist from the wrongful act, or perform any required duty. The secretary of state may call upon any county auditor for aid in investigation and correction of the problem. The secretary of state shall cause any person who violates the secretary of state's order to be prosecuted, if the violation constitutes an offense pursuant to this chapter. If the administrative remedies fail to correct the problem, or if the secretary of state refuses to act, any person may petition the supreme court . . . for an order compelling the correction of the error, wrong, neglect, or act.

(Emphasis added.)

[¶12] In interpreting a statute, words are understood in their ordinary sense. N.D.C.C. § 1-02-02. "Words and phrases must be construed according to the context and the rules of grammar and the approved usage of the language." N.D.C.C. § 1-02-03.

[¶13] Section 16.1-01-08, N.D.C.C., specifically authorizes this Court to order the secretary of state to correct an error which has occurred in placing any name on a ballot or has been committed in printing the ballot. The statute uses the words "which has occurred" and "has been . . . committed" which describes an action that occurred in the past. The plain language of the statute indicates an error may be corrected on a ballot that has already been printed.

[¶14] Furthermore, the statute does not include any time limitations on when a person may petition for an order compelling the correction of an error or limit when the court may order an error be corrected before the election. *Cf. In re Lopez*, 593 S.W.3d 353 (Tex. Ct. App. 2018) (dismissing petition for a writ of mandamus as moot because petition was filed on the day overseas ballots were

4

mailed and statutory law stated an application to be placed on a ballot may not be challenged for compliance with the applicable requirements after the day before any ballot to be voted early by mail is mailed).

[¶15] Because N.D.C.C. § 16.1-01-08 authorizes the Court to order the correction of an error on a printed ballot and does not limit the time for correcting an error before the election, the issues raised in the petition are not moot. Under the facts of this case, we decline to dismiss the petition for mootness.

IV

[¶16] Onstad argues Jones is not eligible to hold the office of state legislator because he will not have been a North Dakota resident for one year preceding the election. Onstad contends undisputed evidence indicates Jones has been a resident of Wyoming and not North Dakota during the year prior to the election, including Jones owns a Wyoming limited liability company, Jones is a registered agent for the company and indicated in its 2019 and 2020 annual reports that he "resides" in Wyoming, he owns residential property in Wyoming and listed the address of that property as his address in the annual reports, he paid property taxes on that residential property in June 2020, he urges people to contact him in his capacity as a state legislator at his Wyoming cell phone number, and he receives fax correspondence from constituents at a Wyoming number associated with his Wyoming company.

[¶17] Eligibility to hold elective office in the state legislature is governed by N.D. Const. art. IV, § 5, which states:

> Each individual elected or appointed to the legislative assembly must be, on the day of the election or appointment, a qualified elector in the district from which the member was selected and must have been a resident of the state for one year immediately prior to that election. An individual may not serve in the legislative assembly unless the individual lives in the district from which selected.

5

We have explained, "A resident of this state, as used in the Constitution, means having had a legal residence 'entitling one to vote or to hold office in the state of North Dakota.'" *Berg*, 2020 ND 178, ¶ 11 (quoting *State ex rel. Sathre v. Moodie*, 258 N.W. 558, 562 (N.D. 1935)).

[¶18] Several factors relevant to determining a person's legal residence are set forth in N.D.C.C. § 54-01-26:

> Every person has in law a residence. In determining the place of residence, the following rules must be observed:
> 1. It is the place where one remains when not called elsewhere for labor or other special or temporary purpose and to which the person returns in seasons of repose.
> 2. There can be only one residence.
> 3. A residence cannot be lost until another is gained.
> . . . .
> 7. The residence can be changed only by the union of act and intent.

A person may have several physical residences, but has only one legal residence. *Berg*, 2020 ND 178, ¶ 12. A person's intent to change their legal residence is an important consideration, but "inconsistent acts can negate declared intent." *Dietz v. City of Medora*, 333 N.W.2d 702, 705 (N.D. 1983).

[¶19] "All of the facts and circumstances in an individual's life may be used when considering the factual issue of whether or not there has been a change of legal residence." *Berg*, 2020 ND 178, ¶ 12. Evidence that has been considered to determine a person's legal residence includes "declarations, payment of taxes, licenses, business connections, property ownership, burial plans, church membership, and membership in clubs." *Dietz*, 333 N.W.2d at 705. A person does not lose his legal residency solely because of temporary absences from the area. *Id.* "Legal residence, determined under the rules in N.D.C.C. § 54-01-26, is a question of fact to be determined by the factfinder." *Berg,* at ¶ 12.

[¶20] Because Jones' legal residence is a question of fact and this Court may send issues of fact to be determined to the district court under N.D.C.C. § 27-02-17, we asked the district court to hold an evidentiary hearing and make factual findings about whether Jones will have been a resident of the State of

6

North Dakota for one year or more on November 3, 2020. The district court found Jones will have been a North Dakota resident for more than one year at the time of the general election, stating:

> Terry B. Jones has had a North Dakota Driver's License since 2013. Mr. Jones' current address is 413 Eagle Drive, New Town, North Dakota.
>
> Mr. Jones started voting in North Dakota State and local elections solely in New Town, North Dakota, casting ballots on November 8, 2016, November 6, 2018, and June 9, 2020. During this time, Mr. Jones has not voted anywhere other than North Dakota.
>
> Mr. Jones has completed and filed a North Dakota income tax return as a resident of North Dakota, paying income taxes on all of his income, whether generated in North Dakota or elsewhere in 2015, 2016, 2017, 2018, and 2019.
>
> Mr. Jones has two vehicles that have been titled in North Dakota since 2017. A third vehicle was titled in North Dakota in 2019.
>
> Mr. Jones' cattle brand is registered in North Dakota.
>
> In 2017, Mr. Jones applied for and received a North Dakota Concealed Weapon License applying as a North Dakota resident.
>
> Mr. Jones' CDL Medical Examiner Certificate was completed by a North Dakota Doctor, and it lists a New Town, North Dakota, address. Mr. Jones receives his medical and dental care in North Dakota.
>
> On January 22, 2016, Mr. Jones registered Jones Brothers Enterprises LLC[ ] as a foreign limited liability company in the State of North Dakota, and he has been the registered agent in North Dakota from that time to the present.
>
> On May 7, 2019, Mr. Jones filed with the North Dakota District Court a Verified Complaint in which he swore under oath that he was a resident of Mountrail County, North Dakota.
>
> Mr. Jones has worked and lived in North Dakota since at least 2015.
>
> . . . .
>
> Terry B. Jones has been a resident of the State of North Dakota for more than one year, and will be a resident of the State of North Dakota for more than a year on November 3, 2020.

7

[¶21]  The district court's factual findings are entitled to appreciable weight. *Berg*, 2020 ND 178, ¶ 15. After reviewing the entire record, we conclude the district court's findings are supported by substantial evidence. We adopt the court's findings.

[¶22] Considering all of the facts and circumstances, Jones will have been a North Dakota resident for more than one year at the time of the November 3, 2020 general election. We conclude Jones satisfies the constitutional residency requirement for election to the office of state legislator and it was not error to place his name on the ballot.

V

[¶23] We deny Onstad's petition for a writ of mandamus.

[¶24]   Jon J. Jensen, C.J.
        Lisa Fair McEvers
        Daniel J. Crothers
        Gerald W. VandeWalle
        Jerod E. Tufte