Petition of Torfin Austin **TEIGEN** filed with the Secretary of State of North Dakota requesting that his name be placed on the Ballot for the next Primary Election for the Office of a Judge of the Supreme Court of North Dakota

William R. **PEARCE**, Petitioner,

v.

Ben **MEIER**, as Secretary of State of the State of North Dakota, Respondent.

Civ. No. 9044.

Supreme Court of North Dakota.

Aug. 2, 1974.

William R. Pearce, Bismarck, for petitioner.

Robert Brady, Asst. Atty. Gen., Bismarck, for respondent.

Torfin Austin Teigen, pro se.

ERICKSTAD, Chief Justice.

On the 23rd of July 1974 William R. Pearce filed an affidavit with this court, saying:

"I

"That he is a citizen and resident of the State of North Dakota, residing in the City of Bismarck; that he is the president of the State Bar Board of North Dakota.

"II

"That affiant is informed and believes that Torfin Austin Teigen, whose place of residence is 346 21st Street North, Fargo, North Dakota, has filed with the Secretary of State of North Dakota nominating petitions for the said Torfin Austin Teigen, for the office of judge of the Supreme Court of the State of North Dakota.

"III

"That your affiant is informed and believes that the Secretary of State of North Dakota is about to and will, unless otherwise restrained, certify the name of said Torfin Austin Teigen to the County Auditors in the State of North Dakota as a candidate for said office, and that his name be placed upon the ballots or in the appropriate places in voting machines to be voted upon as a candidate for said office at the primary election on September 3, 1974.

"IV

"That your affiant believes that an error is about to occur in the placing of the name of said Torfin Austin Teigen on an official election ballot for the following reasons:

"1. That under Section 94 of the Constitution of North Dakota no person shall be eligible to the office of judge of the Supreme Court unless he be learned in the law.

"2. That your affiant believes that the phrase 'learned in the law' is synonymous with and means 'admitted to the bar' or 'admitted to practice' by the Supreme Court of the State of North Dakota, or to be entitled thereto.

"3. That the State Bar Board is the keeper of the record and roll of all applications for admissions and admissions to the bar of this State under Section 27–11–05 of the North Dakota Century Code.

"4. That the said Torfin Austin Teigen has never been admitted to the bar of the State of North Dakota nor to the best knowledge, information and belief of this affiant is he entitled to become admitted to the bar, and that his name does not appear in the roll of those persons admitted to the bar in the State of North Dakota.

"5. That affiant verily believes that the said Torfin Austin Teigen does not have the qualification prescribed by the Constitution of the State of North Dakota to be eligible for the office of judge of the Supreme Court of North Dakota

and that it would be error for the Secretary of State of North Dakota to certify to the County Auditors the name of Torfin Austin Teigen to be placed on official ballots or appear in voting machines.

"V

"Affiant makes and files this affidavit with the Supreme Court pursuant to the provisions of Section 16–01–10, North Dakota Century Code."

In response to that affidavit it was ordered that the Secretary of State, Mr. Ben Meier, be enjoined from certifying the name of Torfin Austin Teigen to the County Auditors of the State of North Dakota for nomination to the office of judge of the Supreme Court of the State of North Dakota or show cause at 2 p.m., Friday, August 2, 1974, in the courtroom of the North Dakota Supreme Court, why he should not be so enjoined from certifying the name of Torfin Austin Teigen to the County Auditors of the State of North Dakota as a candidate for said office.

The order authorized Torfin Austin Teigen to present written affidavits in support of his qualification for the office of judge of the Supreme Court and informed him that he might be represented by counsel at the hearing. The order also required that legal briefs be filed with this court and served upon all interested parties by all interested parties at least two days prior to the date of the hearing on the order to show cause.

Since the date of the order, to-wit, the 24th day of July 1974, the Secretary of State has filed an answer and return with this court, stating:

"1.

"That he has not been given the authority to make inquiry of Torfin Austin Teigen to determine whether he is, in fact, 'learned in the law' as the term is used in Section 94 of the Constitution of the State of North Dakota.

"2.

"That he is without discretionary authority to refuse to accept a petition from the named Torfin Austin Teigen on the alleged basis that Mr. Teigen lacks the constitutional qualification of being 'learned in the law'.

"3.

"That he has properly and regularly carried out the administrative functions imposed upon his office by the Constitution and statutes of the State of North Dakota with regard to the receipt of the petitions filed by Mr. Torfin Austin Teigen as a candidate for the office of judge of the Supreme Court of the State of North Dakota, and that if such petitions appear proper in form and contain the requisite number of signatures, the name of Torfin Austin Teigen will be certified to the various county auditors of this State for the purpose of facilitating the placing of Mr. Teigen's name on the ballot for the forthcoming primary election, unless otherwise restrained by a lawful order of this Court;

"WHEREFORE, in consideration of the fact that the Respondent, Ben Meier, as Secretary of State, is not the candidate whose qualifications are being challenged by the Petitioner, the Respondent respectfully places this matter before the Court for determination."

Mr. Teigen has not filed an affidavit with us, but through the mails our court did receive a document, a photocopy of which follows:

F I L E D
in the Office of the
Clerk of the Supreme Court
JUL 3 0 1974
STATE OF NORTH DAKOTA

In the Spreme Court

State of North Dakota

Response

William R.Pearce
        Petitioner

        v

Ben Meier as seeretary of the State

State of North Dakota

The Affiant    Torfin Austin Teigen

LOUISE A HEINZ
Notary Public CASS COUNTY N. DAK.
My Commission Expires SEPT 22, 1977

That  he is a graduate of the Minneapolis Collge of Law an
accredited school some of highest judges and Governor Floyd B Ol .
Olson the late Governor of that state being a graduate

This  school has either incorporated with other   but records can
be s earched.

That Torfin Austin has maintained a law library and offices at
346 21 St N Fargo N.Dak.  in the practise of patent art  and
search thereoff.

That the allegations of one  said William R   Pearce

                Petitioner

Contends that the Learning of the law the constitutional
requirement   as being leaned in law is

                SYNONYMOUS
                ⋇⋇⋇⋇⋇⋇⋇⋇⋇⋇⋇⋇⋇⋇⋇⋇
with in the defination of the supreme Court intention
the law providing that all legal practising lawyers in Court of
this state must so obede.

Torfin Austin Teigen content the Consitutional Law can not
be abridged  or interpreted in the wide   inference of Law

If the Court would assume this interpretation  it has the
sworn and adjudged right o f such interpretation.

                I plead this is not so

H earing arising  the   3th day of Sep t
In honor to the  Court the affiant will be present if so
allowed by circums tances.

                Signed

                Torfin Austin Teigen

This brief being prepared by the hand and typewriter
in his own offices .

                Kindly overlook   type error.
                No sec here.

July 29  1974   Fargo N.D  346 21 St North
                The affiant further sayeth Not....

In response to the assertion contained in the document received from Mr. Teigen that he is a graduate of the Minneapolis College of Law, Mr. Pearce filed an affidavit in which he states:

"I

"That he is the Petitioner in the above entitled proceeding.

"II ·

"That affiant has received a copy of certain documents filed with the Supreme Court of North Dakota by Torfin Austin Teigen, in which the said Torfin Austin Teigen states that he is a graduate of the Minneapolis College of Law.

"III

"That the Minneapolis-Minnesota College of Law was in 1959 merged with the William Mitchell College of Law.

"IV

"That this affiant on July 30, 1974, called the Director of Admissions of the William Mitchell College of Law and was informed by him that the records disclosed that Torfin Austin Teigen attended the Minneapolis-Minnesota College of Law for one term, from the fall of 1930 to the spring of 1931, and that there is no record of his graduation or other attendance. That the said Director of Admissions stated that a transcript of the record of Torfin Austin Teigen could only be delivered or furnished upon the request of the said Torfin Austin Teigen or upon a subpoena.

"V

"That your affiant has no way of securing said transcript but that the same could be obtained by the said Torfin Austin Teigen."

During oral argument, Mr. Teigen said that he received a Law Degree from the Minneapolis School of Law on June 1, 1931.

Since no jurisdictional issue has been raised and we are inclined to believe that none exists, we shall proceed to the determination of the meaning of the words "learned in the law" in context of Section 94 of our State Constitution, believing that that is the only issue before us.

The facts are that Mr. Teigen attended the Minneapolis-Minnesota College of Law from the fall of 1930 to the spring of 1931; that he has not submitted any evidence to this court to prove that he received a Law Degree from that school or any other school; and that he has not been admitted to the bar of any State or admitted to the practice of law by the supreme court of any State.

■ Our view is that the phrase "learned in the law" is synonymous with and means "admitted to the bar" or "admitted to practice" by the Supreme Court of our State.

In so concluding, we rely on the reasoning of the Supreme Court of the State of Minnesota, as contained in In re Daly, 294 Minn. 351, 200 N.W.2d 913 (1972).

In that case, Charles Thibodeau, who had never been admitted to practice law in the State of Minnesota, sought to have his name appear on the ballots for the general election to be held on November 7, 1972, as a candidate for the office of judge of the district court.

The pertinent provision of the Minnesota Constitution read:

"Judges of the supreme court, the district court, and the probate court *shall be learned in the law*. The qualifications of all other judges and judicial officers shall be prescribed by law." [Emphasis added.] Art. 6, § 7, Minnesota Constitution.

In construing that language, the court relied on its earlier case of State ex rel. Jack v. Schmahl, 125 Minn. 533, 147 N.W. 425 (1914), in which it said:

" * * * Our Constitution (article 6, § 6) provides:

" 'The judges of the supreme and district courts shall be men learned in the law.'

"Beyond question the framers of the Constitution used the last five words quoted in the sense of attorneys at law, and this view has since been uniformly accepted. The few authorities on the subject are to the same effect. See Jamieson v. Wiggin, 12 S.D. 16, 80 N.W. 137 (1899); Freiler v. Schuylkill County, 46 Pa.Super.Ct. 58 [1911]. The matter does not merit further discussion." In re Daly, *supra*, 200 N.W.2d 913 at 916.

■ The court concluded thereafter that since Mr. Thibodeau was not an attorney at law he was not learned in the law, and accordingly he was not entitled to have his name appear on the ballots.

Not only did the Minnesota Supreme Court hold Mr. Thibodeau disqualified from having his name appear on the ballots, but it held that others, including Mr. Daly, who had been disbarred, were also disqualified from having their names appear on the ballots, notwithstanding that they had been once admitted to practice law.

From a practical standpoint, if we are to continue our practice of examining through the auspices of the State Bar Board those who have received Law Degrees from the finest law schools in this country to determine their qualifications to practice law before the highest court of this State, it would seem to follow that we must require that those who seek to sit on the highest court of the State demonstrate first that they are qualified. Under our statutes and under the rules of our court, no one may practice law as an attorney and counselor at law before the State Supreme Court or any other court of record of this State unless he has first been admitted to the bar or to the practice of law by the Supreme Court of this State.

By this opinion, we hold that one must first be admitted to the bar or to the practice of law by this court before one may have his name placed on the ballot as a candidate for the office of judge of this court.

Incidentally, this is not a new philosophy, but is an ancient one.

We learn that as early as 1608, King James I of England was told that he was not qualified to determine the law, in that he was not learned in the laws of his realm.

For this information we credit Professor Edward S. Corwin: "The 'Higher Law' Background of American Constitutional Law", 42 Harvard Law Review 149 and 365 (1928–1929), reprinted in Selected Essays on Constitutional Law, p. 29 (Foundation Press Inc. 1938).

"On Sunday morning, November 10, 1608, Coke and 'all the judges of England, and the Barons of the Exchequer' faced James I at Hampton Court to confute the notion which had been instilled in him by Archbishop Bancroft that, inasmuch as the judges were but his delegates, he was entitled to decide cases in his own person. 'The judges informed the King,' Coke records, 'that no King after the Conquest assumed to himself to give any judgment in any cause whatsoever, which concerned the administration of justice within this realm, but these were solely determined in the courts of justice. . . .' To this the king answered that 'he thought the law was founded on reason, and that he and others had reason, as well as the Judges'; but Coke pointed out the fallacy of this view in the following words:

" 'True it was, that God had endowed his Majesty with excellent science, and great

endowments of nature; *but his Majesty was not learned in the laws of his realm of England, and causes which concern the life, or inheritance, or goods, or fortunes of his subjects, are not to be decided by natural reason, but by the artificial reason and judgment of the law, which law is an act which requires long study and experience, before that a man can attain to the cognizance of it*; and that the law was the golden met-wand and measure to try the causes of the subjects; and which protected his Majesty in safety and peace.'" [Emphasis added.]

For the reasons stated in this opinion, it is ordered that the Secretary of State, Mr. Ben Meier, be enjoined from certifying the name of Torfin Austin Teigen to the County Auditors of the State of North Dakota for nomination to the office of Judge of the Supreme Court of the State of North Dakota.

PAULSON, J., and DOUGLAS B. HEEN and NORBERT J. MUGGLI, District Judges, concur.

HARVEY B. KNUDSON and ROBERT VOGEL, Associate Justices, being absent from the state did not participate; and J. PHILIP JOHNSON, Associate Justice, deeming himself disqualified did not participate; DOUGLAS B. HEEN, Judge of the Second Judicial District, NORBERT J. MUGGLI, Judge of the Sixth Judicial District, and RALPH B. MAXWELL, Judge of the First Judicial District sitting in their stead.

RALPH B. MAXWELL, District Judge (concurring specially).

I agree with the joint conclusion of my colleagues that Mr. Teigen is not a person "learned in the law" and therefore lacks the requisite constitutional qualifications to be a candidate for the Supreme Court. However, I reach this result by a different course. I have grave reservations about endorsing the proposition set out in the majority opinion that "learned in the law" is the same as "admitted to the practice of law."

The constitutional provision with which we are here concerned reads as follows:

"No person shall be eligible to the office of judge of the supreme court unless he be learned in the law * * *" Section 94, Constitution of North Dakota.

Unless "admitted to practice law" is an exact synonym, it should not be used as the sole measure of "learned in the law." I believe that if its concept differs in any degree, it may not constitute the only standard under the constitution.

The majority opinion holds that one may not be learned in the law without being admitted to the Bar. However, a law student does not suddenly become learned in the law by his admission to practice. The learning precedes the examination. It exists beforehand. Success in the examination merely confirms the legal learning. Thus there is a lack of identity of concept in the two terms. To require admission to the Bar in addition to legal learning is to add a new qualification to those set out in the constitution. The opinion of the majority seems to operate to supplement explicit constitutional language, which judicial interpretation should be cautious not to do.

In this case the result need not rest upon the question of admission to the Bar. The record before us conclusively shows that, irrespective of such issue, Mr. Teigen is not a person learned in the law. His return, as set forth in full in the majority opinion, confirms a woeful lack of legal knowledge. The unprofessional, artless cast of this singular document is alone ruinous to the cause of its author.

His oral presentation to the Court gave added dimension to his legal shortcomings. His argument disclosed he was a stranger

to even the law and precedents affecting his own case.

His return, and his argument, effectively demonstrate his want of the most elementary knowledge or skill in the juridical art. He is therefore without eligibility under the language of the constitution to run for the post he seeks.