# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2020 ND 178

Rick Berg, individually in his capacity
as a resident and elector of the State of
North Dakota, and as Chairman of the
North Dakota Republican Party,                           Petitioner

v.

Alvin Jaeger, in his capacity as North
Dakota's Secretary of State, and Travisia
Jonette Minor, A/K/A Travisia Martin,                    Respondents

## No. 20200184

WRIT OF INJUNCTION GRANTED.

Per Curiam.

Courtney A. Presthus, Dickinson, N.D., for petitioner.

Matthew A. Sagsveen, Solicitor General, Office of the Attorney General, Bismarck, N.D., for respondent Alvin Jaeger.

McLain J. Schneider (argued), Fargo, N.D., and David C. Thompson (appeared), Grand Forks, N.D., for respondent Travisia Martin.

# Berg v. Jaeger
## No. 20200184

**Per Curiam.**

[¶1]   Rick Berg, as a resident and elector of this state, and as chairman of the North Dakota Republican Party, petitioned this Court to exercise its original jurisdiction and issue a writ of mandamus directing Secretary of State Alvin Jaeger to remove Travisia Jonette Minor, A/K/A Travisia Martin from the November 3, 2020, general election ballot for the office of insurance commissioner. We exercise our original jurisdiction to consider Berg's petition, and we grant an alternative writ of injunction.

I

[¶2]   On April 2, 2020, Martin filed an affidavit of candidacy, statement of interest, and certificate of endorsement with Jaeger requesting she be placed on the primary election ballot as the North Dakota Democratic-NPL party candidate for North Dakota Insurance Commissioner. In the affidavit of candidacy, Martin certified she met the requirements to hold the office of insurance commissioner.

[¶3]   On May 20, 2020, the executive director of the North Dakota Republican Party sent a letter to Jaeger stating Martin was ineligible to hold the office of insurance commissioner because she was not a North Dakota resident for five years preceding the November 2020 election. The Republican Party alleged Martin was ineligible to hold elective office because she voted in Nevada in the November 2016 election. The Republican Party requested Jaeger remove Martin from the November 2020 general election ballot.

[¶4]   On May 28, 2020, Jaeger sent a letter to Martin requesting information regarding her North Dakota residence. In response, Martin asserted she had maintained her physical residence in North Dakota since 2015. Martin also admitted to voting in Nevada in the November 2016 election, claiming she was unfamiliar with North Dakota's voter eligibility requirements. Martin included with her response a letter from Dale Vander Vorst attesting that Martin had been residing with him in North Dakota since before November 2015. Martin

1

also included letters from her former attorney and orthopedic surgeon stating she moved to North Dakota in 2015.

[¶5]   Jaeger refused to remove Martin from the ballot, stating he may only remove a candidate from the ballot if the candidate refuses to accept the party nomination or if ordered to do so by a court. On July 9, 2020, Berg petitioned this Court for a writ of mandamus directing Jaeger to remove Martin from the general election ballot. Berg contends Martin was not a resident of North Dakota in 2016 when she voted in Nevada, and therefore she will be ineligible to hold the office of insurance commissioner because she will not have been a resident for the required five years preceding election.

[¶6]   Following oral argument, this Court ordered the district court to hold an evidentiary hearing and make findings of fact on "whether [Martin] will have been a North Dakota resident for the five years preceding the 2020 general election." On August 12, 2020, the district court held an evidentiary hearing. The court heard testimony from Martin and Vander Vorst and received several exhibits into evidence. After the hearing, the court found "Martin was not a North Dakota resident until sometime after November 2016."

II

[¶7]   Article VI, § 2, of the North Dakota Constitution states this Court "shall have appellate jurisdiction, and shall also have original jurisdiction with authority to issue, hear, and determine such original and remedial writs as may be necessary to properly exercise its jurisdiction." This Court's authority to issue original writs is discretionary and may not be invoked as a matter of right. *Riemers v. Jaeger*, 2018 ND 192, ¶ 5, 916 N.W.2d 113. "It is well settled that the power to exercise our original jurisdiction extends only to those cases where the questions presented are *publici juris* and affect the sovereignty of the state, the franchises or prerogatives of the state, or the liberties of its people." *Id.* "The interest of the state must be primary, not incidental, and the public must have an interest or right that is affected." *Id.*

[¶8]   The issue in this case concerns the eligibility of a candidate for state office to hold the office and "involves the people's power to govern themselves

through the voting process." *Riemers*, 2018 ND 192, ¶ 6. Our cases have recognized the public interest involved with the power of the people to govern themselves in the voting process. *Id.* The issue here involving the eligibility of a candidate for state office is a matter of public interest warranting the exercise of this Court's original jurisdiction to consider Berg's petition.

## III

[¶9]   "Under N.D.C.C. § 32-34-01, this Court may issue a writ of mandamus to compel performance of an act which the law specifically enjoins as a duty resulting from an office." *Riemers*, 2018 ND 192, ¶ 7. "A petitioner for a writ of mandamus must show a clear legal right to performance of the act sought to be compelled and must establish no plain, speedy, and adequate remedy exists in the ordinary course of law." *Id.* To be enforceable by mandamus, the law must require an act to be done; mandamus cannot compel an official's discretionary actions. *Eichhorn v. Waldo Twp. Bd. of Supervisors*, 2006 ND 214, ¶ 19, 723 N.W.2d 112.

## A

[¶10] Berg claims Martin is not eligible to hold the office of insurance commissioner because she will not have been a North Dakota resident for five years preceding the election.

[¶11] Eligibility to hold elective office in the executive branch is governed by N.D. Const. art. V, § 4, which states that "[t]o be eligible to hold an elective office established by this article, a person must be a qualified elector of this state, must be at least twenty-five years of age on the day of the election, and must have been a resident of this state for the five years preceding election to office." A resident of this state, as used in the Constitution, means having had a legal residence "entitling one to vote or to hold office in the state of North Dakota." *State ex rel. Sathre v. Moodie*, 65 N.D. 340, 258 N.W. 558, 562 (1935). Several factors relevant to determining one's legal residence are set forth in N.D.C.C. § 54-01-26:

> Every person has in law a residence. In determining the place of residence, the following rules must be observed:

1. It is the place where one remains when not called elsewhere for labor or other special or temporary purpose and to which the person returns in seasons of repose.
2. There can be only one residence.
3. A residence cannot be lost until another is gained.
. . . .
7. The residence can be changed only by the union of act and intent.

[¶12] "A legal residence is the place where an individual has established his home, where he is habitually present, and which he intends to return to when he is away for business or pleasure." *Dietz v. City of Medora*, 333 N.W.2d 702, 705 (N.D. 1983). "Every person has only one legal residence, as distinguished from the possibility of several actual physical residences." *Id.* All of the facts and circumstances in an individual's life may be used when considering the factual issue of whether or not there has been a change of legal residence. *Id.* Legal residence, determined under the rules in N.D.C.C. § 54-01-26, is a question of fact to be determined by the factfinder. *Dietz*, at 705.

[¶13] If an issue of fact is presented in an original proceeding in this Court, N.D.C.C. § 27-02-17 provides:

> If an issue of fact is joined, or an assessment of damages by a jury is necessary, in any action or proceeding commenced in the supreme court, the court, in its discretion, may send the same to some district court, and it there must be determined in the same manner as other issues of fact are tried or other assessments are made, and a return thereof must be made as directed by the supreme court. In such cases, the supreme court may order a special verdict to be found and returned.

Because Martin's residence is a question of fact, we asked the district court for factual findings relating to Martin's residence for the five years preceding the general election. In finding that Martin did not become a North Dakota resident until after November 2016, the district court stated in part:

> In considering the testimony from Martin, the Court is also left with evidence and testimony that her actions and intentions

4

regarding her residency often conflicted at various times during the relevant timeframe. However, the Court does specifically find that Martin was a credible witness. She appeared truthful and candid, and nothing in her testimony suggested any ill will or intent both in her current testimony or in her actions throughout the timeframe relevant to this matter.

. . . .

Given all the evidence and testimony, this Court specifically finds that Martin was not a North Dakota resident at the time she cast her vote in the November 2016 election. While Martin had, in part, acted as though she was a North Dakota resident by physically moving to North Dakota, and while she likely had begun the intention of changing domiciles, she had not fully abandoned her former Nevada domicile, and she did not yet have a bona fide intention to change and remain in North Dakota permanently. This finding is based on numerous factors, some of which are more persuasive than others, but none of which are conclusive. Taken together, the facts indicate that Martin did not have union of act and intent to change her residence at least through November 8, 2016.

Prior to casting her 2016 vote in Nevada, the Court recognizes that Martin had physically moved to North Dakota and she began renting out her Nevada home. However, the rental agreement for Martin's Nevada home indicated a month-to-month term, leaving Martin free at any time to provide "30-day's notice" to her tenant to move out. *See* Respondent's Exhibit 2; Appellate Appendix at p. 22. The rental agreement also stated it was intended "to promote <u>household harmony</u> by clarifying the responsibilities and expectations of the Owner and Tenant while <u>sharing the home</u>." (emphasis added). This language itself suggests that Martin, in executing the document, intended to remain as part of the "household" and to "share" the home. This is further evidenced by the fact that Martin kept her personal vehicle at the home.

Prior to casting her 2016 vote in Nevada, Martin also had not changed any of her addresses on any of her government-issued identification cards. Her driver's license still reflected her Nevada

address, as did her passport. She did not work in North Dakota prior to voting in 2016, mainly due to her injury. She did not obtain her professional license in North Dakota until December 2016, although she had started the process before that time. She did not own a home in North Dakota, but lived with her partner in his home in Mandan. She continued her medical care with her medical providers in Nevada through 2016.

And the Court certainly cannot ignore the fact that Martin voted in Las Vegas, Nevada on November 8, 2016. In doing so, she specifically chose not to avail herself of the rights of citizenship in North Dakota, but instead to avail herself of the rights of citizenship in Nevada. She did this in-person by physically appearing at the polling location in Nevada. She identified herself with her passport, which contained her Nevada address. In doing so, Martin consciously availed herself of that Nevada address in order to cast her vote. Her intent was clearly to cast a legal vote. And in doing so, she did not intend to exercise any rights of citizenship in North Dakota, but intended to exercise them in Nevada.

"When you intend the facts to which the law attaches a consequence, you must abide the consequence whether you intend it or not." *Moodie*, 258 N.W. 558 at 566 (quoting *Dickinson v. Brookline*, 181 Mass. at 196). Martin intended to cast a legal vote in Nevada, and she was a registered voter in Nevada with a valid Nevada address at the time she cast her vote. By showing her passport as valid identification and proof of residency, Martin indicated that her Nevada address was intended by her to be her legal residence for the purpose of voting and enjoying all the civil rights and privileges that come therewith.

At the hearing in this matter, counsel for Martin continuously argued that voting and registering in a particular place is not conclusive proof of residence. This Court agrees, and that is what the law states. However, by voting in Nevada and availing herself of the rights of citizenship in Nevada, Martin removed any doubt this Court may have had regarding her intended residency in 2016.

6

Other than physically living in North Dakota, most of Martin's other actions suggested an intention to retain her legal residence in Nevada, including maintaining her home, driver's license, passport, and vehicle registration all in Nevada. She continued to receive medical care in Nevada, traveled there often, and kept her personal vehicle there. "[N]otwithstanding one may testify that his intention was to make his home in a certain place, if his acts are of a character to negative his declaration or inconsistent with it, it is clear that the court cannot be governed by his testimony as to intention." *Moodie*, 258 N.W. 558 at 563. This Court finds that although Martin testified that she intended North Dakota to be her residence in 2015-16, the vast majority of her actions in that timeframe are inconsistent with such an intention.

To the extent the Court had any doubts that Martin had not yet formed act and intent to change her domicile to North Dakota after hearing the testimony regarding her actions up until November 8, 2016, this doubt was removed by the testimony regarding Martin's decision to cast her vote in Nevada and to avail herself of the rights of citizenship there. "The fact of voting is not conclusive, but it is a strong circumstance which indicates the intention of the voter to cast a legal vote." *Id.* at 564.

This Court has no doubt that Martin fully formed the intent to make North Dakota her legal residence at some point after 2016. After that time, she began working exclusively in North Dakota, she bought a home with her partner in North Dakota, and she sold her home in Nevada. She has also since changed all of her government-issued identification documents to reflect her North Dakota address, including her passport.

However, all of the evidence and testimony presented to this Court regarding Martin's intent and her actions, both prior-to and up until her vote in 2016, suggest she had not fully abandoned her Nevada domicile and residency, and she continued to avail herself of the rights of being a citizen of Nevada. She availed herself of these rights specifically to the exclusion of exercising many of those rights in North Dakota, including the right to vote.

> Because there has not been a showing that during the necessary timeframe Martin had a union of both act and intent to change her residence from Las Vegas, Nevada, and establish it in North Dakota, the Court finds Martin was not a North Dakota resident until sometime after November 2016. Therefore, this Court specifically finds that Martin will not have been a North Dakota resident for the five years preceding the 2020 general election.

[¶14] When exercising our appellate jurisdiction, we review a district court's factual findings under the clearly erroneous standard of review. *Rustad v. Baumgartner*, 2020 ND 126, ¶ 8, 943 N.W.2d 786. This case is not an appeal but one where we exercised our original jurisdiction and sent the factual issue of Martin's residence to the district court under N.D.C.C. § 27-02-17. The statutory duty performed by the district court judge, who heard and observed the witnesses, aided the discharge of our duty in deciding whether to grant the relief requested by Berg. In other contexts, this Court has considered the district court's findings by de novo or independent review. *See Jensen v. State*, 373 N.W.2d 894, 899-900 (N.D. 1985) (review of the record is de novo in habeas corpus cases); *Olson v. North Dakota Dist. Court*, 271 N.W.2d 574, 579 (N.D. 1978) (in supervisory writ petition for change of venue, "we make an independent review of the record to determine if a reasonable likelihood of prejudice exists, giving appreciable weight to the trial court's findings of fact based on testimony of live witnesses."). Other jurisdictions use a slightly different articulation of how they employ facts found by a non-appellate court. *See, e.g., Turner v. Commonwealth*, 694 S.E.2d 251, 262-63 (Va. Ct. App. 2010) (stating that in original jurisdiction habeas corpus cases, a lower court's factual findings are entitled to deference and are binding upon the appellate court exercising original jurisdiction unless plainly wrong or without evidence to support them).

[¶15] Regardless of how we describe our use of the record, here the district court's factual findings are entitled to appreciable weight. The district court found after 2016 Martin began working exclusively in North Dakota. Our review of the record indicates that Martin began working in North Dakota after that time, but not exclusively. Aside from that detail, our review of the

8

record confirms the district court's findings are supported by substantial evidence; therefore, we adopt the remainder of the district court's findings of fact.

B

[¶16] Martin argues the five-year residency requirement of N.D. Const. art. V, § 4, violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Martin claims the residency requirement significantly limits voters' choices relating to elected officials and impairs the rights of new residents to seek public office.

[¶17] Martin relies on *Robertson v. Bartels*, 150 F.Supp. 2d 691, 699 (D.N.J. 2001), which struck down a residency requirement to be elected to New Jersey's General Assembly. New Jersey required a candidate seeking membership in the General Assembly to be a resident for one year in the "district for which he shall be elected." *Id.* at 693. The court held "New Jersey's one-year residency requirement for candidates for the Senate and General Assembly does not survive the strict scrutiny inquiry and is, therefore, violative of the [Fourteenth Amendment] Equal Protection Clause." *Id.* at 699. The New Jersey Supreme Court disagreed with the *Robertson* decision and declined to apply it beyond the affected election. *In re Contest of Nov. 8, 2011 Gen. Election of Office of New Jersey Gen. Assembly*, 40 A.3d 684, 704 (N.J. 2012). No other jurisdiction has followed the holding in *Robertson. See, e.g.*, *Lewis v. Guadagno*, 837 F.Supp. 2d 393 (D.N.J. 2011); *but see Callaway v. Samson*, 193 F.Supp. 2d 783, 788 (D.N.J. 2002) (enjoining local election one-year residency requirement as violating a particular candidate's constitutional right to travel).

[¶18] In this expedited proceeding the State has had minimal opportunity to respond to Martin's equal protection challenge. At oral argument the State cited cases upholding residency restrictions on candidates for elective office did not violate the Equal Protection Clause. *See Hankins v. State of Hawaii*, 639 F.Supp. 1552 (D. Haw. 1986) (upholding Hawaii's five-year residency requirement as a condition of eligibility for office of governor); *Sununu v. Stark*, 383 F.Supp. 1287 (D.N.H. 1974), *aff'd*, 420 U.S. 958 (1975) (upholding New

9

Hampshire's seven-year residency requirement upon candidate seeking office of state senator); *Chimento v. Stark*, 353 F.Supp. 1211 (D.N.H. 1973), *aff'd*, 414 U.S. 802 (1973) (upholding New Hampshire's seven-year residency requirement as a condition of eligibility for office of governor).

[¶19] The cases upholding residency requirements conclude the requirements fulfill legitimate state interests because they allow the candidate to become familiar with his or her constituency and ensure the voters have been exposed to the candidate. *Hankins*, 639 F.Supp. at 1556; *Sununu*, 383 F.Supp. at 1290; *Chimento*, 353 F.Supp. at 1215. *Sununu* and *Chimento* upheld the residency requirements under the "compelling state interest" standard of review, and *Hankins* applied rational basis review. *Hankins*, at 1556; *Sununu*, at 1290; *Chimento*, at 1214. The *Hankins* court also concluded Hawaii's five-year residency requirement for the office of governor survived strict scrutiny analysis. *Hankins*, at 1557.

[¶20] For candidates seeking an elected office in the executive branch, N.D. Const. art. V, § 4, imposes a five-year residency requirement. By contrast, N.D. Const. art. IV, § 5, imposes only a one-year residency requirement for candidates seeking election to the legislative assembly. The State has a legitimate interest in requiring that candidates for an executive branch office possess a familiarity with the constituency and knowledge of statewide issues. While Martin's opportunity to seek this office is limited to some degree, her opportunity to seek elective office in this state is not severely hindered by the constitutional residency requirements. We conclude the five-year residency requirement of N.D. Const. art. V, § 4, does not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

C

[¶21] Berg contends N.D.C.C. § 16.1-08-01 requires Jaeger to remove Martin from the general election ballot. Section 16.1-08-01, N.D.C.C. states:

> The secretary of state shall thoroughly investigate, when the matter comes to the secretary of state's attention, any of the following:

1. Any error or omission which has occurred or is about to occur in the placing of any name on an official election ballot.
2. Any error which has been or is about to be committed in printing the ballot.
3. Any wrongful act which has been or is about to be done by any judge or election clerk, county auditor, canvassing board, a canvassing board member, or any other person charged with any duty concerning the election.
4. Any neglect of duty which has occurred or is about to occur.

If required, the secretary of state shall order the officer or person charged with such error, wrong, or neglect to correct the error, desist from the wrongful act, or perform any required duty. The secretary of state may call upon any county auditor for aid in investigation and correction of the problem. The secretary of state shall cause any person who violates the secretary of state's order to be prosecuted, if the violation constitutes an offense pursuant to this chapter. If the administrative remedies fail to correct the problem, or if the secretary of state refuses to act, any person may petition the supreme court, or the district court of the relevant county where the election of a county officer is involved, for an order compelling the correction of the error, wrong, neglect, or act.

[¶22] Berg claims the alleged ballot error here is Martin's eligibility to hold the office of insurance commissioner. Berg argues N.D.C.C. § 16.1-08-01 obligates Jaeger to investigate Martin's eligibility and correct the error by removing her from the election ballot.

[¶23] Berg's argument that Martin's ineligibility requires Jaeger to remove her name from the election ballot is similar to an argument this Court addressed in *Petition of Teigen*, 221 N.W.2d 94 (N.D. 1974). In *Teigen*, the president of the State Bar Board, William Pearce, filed an affidavit with this Court disputing the eligibility of Torfin Teigen, who was seeking the office of judge of the Supreme Court of North Dakota. *Id.* at 95. Pearce stated that under the Constitution, "no person shall be eligible to the office of judge of the Supreme Court unless he be learned in the law." *Id.* Pearce believed an error would occur in placing Teigen's name on the ballot because Teigen was not learned in the

11

law, was not admitted to practice law in the state, and therefore was not "eligible for the office of judge of the Supreme Court of North Dakota." *Id.* Pearce requested that Secretary of State Meier be restrained from placing Teigen's name on the ballot. *Id.* at 95-96. In response, Meier stated he was without authority to inquire whether Teigen was eligible to hold the office. *Id.* at 96. Meier stated that if the petitions filed by Teigen as a candidate for office were proper on their face, he was required to place Teigen's name on the ballot, "unless otherwise restrained by a lawful order of this Court." *Id.*

[¶24] This Court concluded "that the phrase 'learned in the law' is synonymous with and means 'admitted to the bar' or 'admitted to practice' by the Supreme Court of our State." *Teigen*, 221 N.W.2d at 98. This Court stated that Teigen had not submitted any evidence showing he received a law degree or was admitted to the bar of any state. *Id.* We held "that one must first be admitted to the bar or to the practice of law by this court before one may have his name placed on the ballot as a candidate for the office of judge of this court." *Id.* at 99. This Court "ordered that the Secretary of State, Mr. Ben Meier, be enjoined from certifying the name of Torfin Austin Teigen to the County Auditors of the State of North Dakota for nomination to the office of Judge of the Supreme Court of the State of North Dakota." *Id.* at 100.

[¶25] In *Teigen*, 221 N.W.2d at 96, Pearce filed his affidavit under N.D.C.C. § 16-01-10, the predecessor to N.D.C.C. § 16.1-08-01, relating to the correction of errors on ballots. Section 16-01-10, N.D.C.C., provided:

> Wherever it shall be made to appear by an affidavit to the supreme court, or to the district court of the proper county that:
>
> 1. An error or omission has occurred or is about to occur in the placing of any name on an official election ballot;
> 2. Any error has been or is about to be committed in printing such ballot;
> 3. Any wrongful act has been or is about to be done by any judge or clerk of election, county auditor, canvassing board, member thereof, or other person charged with any duty concerning the election; or
> 4. Any neglect of duty has occurred or is about to occur,

12

a judge of such court shall order the officer or person charged with such error, wrong, or neglect to correct the error, desist from the wrongful act, perform the duty, or show cause at a time and place to be fixed by the court why he should not do so. Failure to obey the order of such judge shall be contempt of court.

[¶26] Similar to N.D.C.C. § 16-01-10, N.D.C.C. § 16.1-08-01 allows any person to petition a district court or this Court "for an order compelling the correction of the error" if the error "has occurred or is about to occur in the placing of any name on an official election ballot."

[¶27] Here, Martin seeks election to the executive branch office of insurance commissioner. "To be eligible to hold an elective office established by this article, a person must be a qualified elector of this state, must be at least twenty-five years of age on the day of the election, and must have been a resident of this state for the five years preceding election to office." N.D. Const. art. V, § 4. Thus, to be eligible to hold an elective office in the executive branch, one must have been a resident of this state for five years on election day. Because Martin was not a resident until after November 2016, she will not have been a North Dakota resident for five years on November 3, 2020. Therefore, she is not eligible to hold the office of insurance commissioner.

[¶28] Berg seeks a writ of mandamus from this Court directing Jaeger to remove Martin from the election ballot. In *Teigen*, 221 N.W.2d at 100, we enjoined Secretary Meier from placing Teigen on the ballot. Under N.D.C.C. § 27-02-04, this Court may issue a writ of injunction when exercising our original jurisdiction. An injunction may be granted "[w]hen it shall appear by the complaint that the plaintiff is entitled to the relief demanded, and such relief, or any part thereof, consists in restraining the commission or continuance of some act, the commission or continuance of which during the litigation would produce injury to the plaintiff." N.D.C.C. § 32-06-02(1).

[¶29] If a petitioner for a writ sets forth a claim entitling them to relief, we will consider the petition even though an alternative writ may be a more appropriate remedy. *Stearns v. Twin Butte Pub. Sch. Dist. No. 1*, 185 N.W.2d 641, 645 (N.D. 1971). "[T]his court, in the exercise of its original jurisdiction,

13

may frame its process as the exigencies require." *State ex rel Lofthus v. Langer*, 46 N.D. 462, 177 N.W. 408, 413 (1919). A writ of injunction is the correlative of a writ of mandamus. *State ex rel. McArthur v. McLean*, 35 N.D. 203, 159 N.W. 847, 851 (1916). The former issues to restrain action while the latter issues to compel action. *Id*. We will issue a writ of injunction if the resolution of the issues in the instant case necessitates such a result.

[¶30] While Berg petitioned for mandamus rather than an injunction, Berg has established a right to relief. Martin is not eligible to hold the office of insurance commissioner, and it would be erroneous to place her name on the ballot. We therefore enjoin Jaeger from placing Martin's name on the general election ballot.

IV

[¶31] We issue a writ of injunction restraining Secretary of State Jaeger from placing the name of Travisia Jonette Minor, A/K/A Travisia Martin, on the November 3, 2020, general election ballot.

[¶32]  Jon J. Jensen, C.J.
      Gerald W. VandeWalle
      Daniel J. Crothers
      Lisa Fair McEvers
      Jerod E. Tufte