# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2020 ND 190

Kylie Michelle Oversen, individually and
in her capacity as Chairwoman of the
Democratic-Non-Partisan League Party
of North Dakota, and Jason Anderson,
a candidate nominated by the Democratic
-Non-Partisan League Party of North Dakota
for the statewide elective office of
North Dakota Insurance Commissioner,                              Petitioners

       v.

Alvin Jaeger, in his capacity as
North Dakota Secretary of State,                                 Respondent

### No. 20200234

WRIT DENIED.

Per Curiam. Justice VandeWalle filed a dissenting opinion.

David C. Thompson, Grand Forks, ND, for petitioners.

Matthew A. Sagsveen, Solicitor General, Office of the Attorney General, Bismarck, ND, for respondent.

**Per Curiam.**

[¶1]   Kylie Oversen, individually and as chairwoman of the Democratic-Non-Partisan League Party of North Dakota, and Jason Anderson, as a candidate nominated by the Democratic-Non-Partisan League Party of North Dakota for the statewide elective office of North Dakota Insurance Commissioner, petitioned this Court to exercise its original jurisdiction and issue a writ of mandamus directing Secretary of State Alvin Jaeger to accept and certify Anderson for inclusion on the November 3, 2020 general election ballot for the office of insurance commissioner. Oversen and Anderson argue there is a vacancy on the ballot for that position and Jaeger is required to place Anderson's name on the ballot as the nominated and endorsed Democratic-NPL party candidate for the office under N.D.C.C. § 16.1-11-18(4). We conclude Jaeger correctly applied North Dakota law by refusing to include Anderson on the general election ballot. We deny the petition.

I

[¶2]   This case stems from *Berg v. Jaeger*, 2020 ND 178, __ N.W.2d __, and we will not repeat the facts except as necessary to resolve the issues raised in this petition.

[¶3]   On April 2, 2020, Travisia Jonette Minor, A/K/A Travisia Martin, filed an affidavit of candidacy, statement of interest, and certificate of endorsement with Jaeger requesting she be placed on the June 9, 2020 primary election ballot as a Democratic-NPL party candidate for North Dakota Insurance Commissioner. In the affidavit of candidacy, Martin certified she met the requirements to hold the office of insurance commissioner. Jaeger placed Martin on the primary election ballot as a Democratic-NPL party candidate for insurance commissioner. Martin won the Democratic-NPL primary and placement as the party's candidate on the general election ballot.

1

[¶4] On July 9, 2020, Rick Berg, as a resident and elector of this state, and as chairman of the North Dakota Republican Party, petitioned this Court for a writ of mandamus directing Jaeger to remove Martin from the general election ballot. Berg argued Martin could not meet the constitutionally mandated five year residency requirement necessary to hold the office of insurance commissioner.

[¶5] On August 26, 2020, this Court granted a writ of injunction restraining Jaeger from placing Martin's name on the November 3, 2020 general election ballot. *Berg*, 2020 ND 178, ¶ 31. We concluded N.D. Const. art. V, § 4 requires a person to have been a resident of this state for the five years preceding the election to be eligible to hold elective office in the executive branch. *Id.* at ¶ 11. We adopted the district court's finding that Martin will not have been a North Dakota resident for the five years preceding the 2020 general election. *Id.* at ¶ 15. We held, "Martin is not eligible to hold the office of insurance commissioner, and it would be erroneous to place her name on the ballot. We therefore enjoin Jaeger from placing Martin's name on the general election ballot." *Id.* at ¶ 30.

[¶6] On August 26, 2020, Jaeger sent Oversen an email explaining N.D.C.C. § 16.1-11-18(6)(d) states a vacancy occurs when a candidate "[c]eases to be qualified to serve, if elected, as otherwise provided by law[,]" the candidate must have been qualified at some earlier point but is no longer qualified, the Supreme Court determined Martin was not qualified when she was on the primary ballot, and therefore she cannot cease to be qualified and no vacancy exists according to law. He further stated the only way another candidate could be included on the ballot was if they submit a nominating petition to run as an independent candidate with at least 1,000 signatures and the candidacy paperwork before 4:00 p.m. on August 31, 2020.

[¶7] On August 28, 2020, Oversen filed the Democratic-NPL Executive Committee's certificate of cause of vacancy and nomination, stating Jaeger's removal of Martin's name from nomination created a vacancy on the general election ballot for the office of insurance commissioner and the committee was endorsing Jason Anderson as the substitute Democratic-NPL endorsed

candidate. She also submitted Anderson's affidavit of candidacy, statement of interest, and the Democratic-NPL certificate of endorsement.

[¶8]   On August 31, 2020, Oversen submitted an updated certificate of cause of vacancy and nomination and other forms for Anderson's candidacy. Jaeger has refused to place Anderson's name on the general election ballot as the Democratic-NPL party candidate for insurance commissioner. Jaeger explained a political party may not fill a vacancy after the primary election unless one of four criteria listed in N.D.C.C. § 16.1-11-18(6) is satisfied. In this instance, the criteria at issue is N.D.C.C. § 16.1-11-18(6)(d) which states a vacancy may be filled when a candidate "[c]eases to be qualified to serve, if elected, as otherwise provided by law." Jaeger asserts the candidate must have been initially qualified and subsequently cease to be qualified. He contends that our determination in *Berg* establishes that Martin was not qualified when she was on the primary ballot and as a result she cannot cease to be qualified. On August 31, 2020, Oversen and Anderson petitioned this Court for a writ of mandamus to compel Jaeger to accept and certify Democratic-NPL party insurance commissioner candidate Anderson for inclusion on the November 3, 2020 general election ballot.

## II

[¶9]   Article VI, § 2, of the North Dakota Constitution gives this Court the authority to issue, hear, and determine original and remedial writs as may be necessary to properly exercise its jurisdiction. This Court's authority is discretionary and we will determine for ourselves whether to exercise our jurisdiction. *Bolinske v. Jaeger*, 2008 ND 180, ¶ 4, 756 N.W.2d 336. "[T]he power to exercise our original jurisdiction extends only to those cases where the questions presented are *publici juris* and affect the sovereignty of the state, the franchises or prerogatives of the state, or the liberties of its people." *Berg*, 2020 ND 178, ¶ 7 (quoting *Riemers v. Jaeger*, 2018 ND 192, ¶ 5, 916 N.W.2d 113). "The interest of the state must be primary, not incidental, and the public must have an interest or right that is affected." *Berg*, at ¶ 7 (quoting *Riemers*, at ¶ 5).

3

[¶10] A writ of mandamus may be issued to compel the performance of an act which the law specifically requires a state official to perform. N.D.C.C. § 32-34-01. "A petitioner for a writ of mandamus must show a clear legal right to performance of the act sought to be compelled and must establish no plain, speedy, and adequate remedy exists in the ordinary course of law." *Berg*, 2020 ND 178, ¶ 9 (quoting *Riemers*, 2018 ND 192, ¶ 7). The law must require an act to be done to be enforceable by mandamus. *Berg*, at ¶ 9.

III

[¶11] Oversen and Anderson argue N.D.C.C. § 16.1-11-18(4) requires Jaeger to place Anderson on the ballot as the Democratic-NPL endorsed candidate because they complied with statutory requirements. They claim once Oversen submitted the certificate of cause of vacancy and nomination, Jaeger did not have discretion to refuse to certify the new nomination. They further assert Jaeger wrongfully refused to certify the replacement nomination by erroneously interpreting N.D.C.C. § 16.1-11-18(6)(d).

[¶12] Our primary goal in interpreting statutes is to determine the legislature's intent. *Laufer v. Doe*, 2020 ND 159, ¶ 11, 946 N.W.2d 707. We look at the plain language of the statute and give each word its plain, ordinary, and commonly understood meaning, unless it is specifically defined. N.D.C.C. § 1-02-02. Statutes must be construed as a whole to determine the legislature's intent and are harmonized to give meaning to related provisions. *Jangula v. N.D. Dep't. of Transp.*, 2016 ND 116, ¶ 11, 881 N.W.2d 639. Under N.D.C.C. § 1-02-07, a specific provision in a statute controls a general provision if the two conflict and cannot be reconciled. *See Rocky Mountain Steel Founds., Inc. v. Brockett Co., LLC*, 2018 ND 96, ¶ 11, 909 N.W.2d 671. "We presume the legislature did not intend an absurd or ludicrous result or unjust consequences, and we construe statutes in a practical manner, giving consideration to the context of the statutes and the purpose for which they were enacted." *Laufer*, at ¶ 11 (citation omitted).

[¶13] Section 16.1-11-18, N.D.C.C., governs the filling of a vacancy that occurs in a nomination for a party office, stating:

4

4. If a vacancy occurs in a slate of statewide candidates after the candidates have been nominated at the primary election, the proper state executive committee may fill any vacancy by filing a certificate of nomination with the secretary of state. The chairman and secretary of the committee shall make and file with the secretary of state a certificate setting forth the cause of the vacancy, the name of the person for whom the new nominee is to be substituted, the fact that the committee was authorized to fill vacancies, and any further information as may be required to be given in an original certificate of nomination. When such a certificate is filed, the secretary of state shall certify the new nomination and the name of the person who has been nominated to fill the vacancy in place of the original nominee to the various auditors. If the secretary of state already has forwarded the certificate, the secretary of state forthwith shall certify to the auditors the name and address of the new nominee, the office the new nominee is nominated for, the party or political principle the new nominee represents, and the name of the person for whom the new nominee is substituting. Failure to publish the name of a new nominee does not invalidate the election.

. . . .

6. A vacancy in a nomination following a primary election may not be filled according to subsection 4 or 5 unless the nominated candidate:

    a. Dies;

    b. Would be unable to serve, if elected, as a result of a debilitating illness;

    c. Ceases to be a resident of the state or an individual nominated for legislative office will not be a resident of the legislative district at the time of the election; or

    d. Ceases to be qualified to serve, if elected, as otherwise provided by law.

Vacancies to be filled according to the provisions of this section may be filled not later than the sixty-fourth day prior to the election.

[¶14] Section 16.1-11-18(4), N.D.C.C., states a political party executive committee may fill any vacancy in a slate of statewide candidates, if a vacancy occurs after the candidates have been nominated at the primary election, by

filing a certificate of nomination with the secretary of state. The statute further provides the secretary of state shall certify the new nomination and the name of the person who has been nominated to fill the vacancy in place of the original nominee to the various auditors after the certificate of nomination has been filed. However, N.D.C.C. § 16.1-11-18(4) must be read together with N.D.C.C. § 16.1-11-18(6), which defines four circumstances under which a vacancy may be filled under subsection 4. We conclude Jaeger was not required to place Anderson's name on the general election ballot without considering whether one of the circumstances under N.D.C.C. § 16.1-11-18(6) applies.

[¶15] For purposes of this petition we assume without deciding a vacancy exists. Oversen and Anderson do not argue any of the provisions under N.D.C.C. § 16.1-11-18(6) apply other than subsection (6)(d). As noted above, subsection (6)(d) provides a vacancy in a nomination following a primary election may not be filled unless the nominated candidate "[c]eases to be qualified to serve, if elected, as otherwise provided by law."

[¶16] Oversen and Anderson argue that this Court held Martin was not eligible, and that we did not hold that she was not qualified. They contend Martin was "qualified" by Jaeger as a candidate for the office of insurance commissioner when she was placed on the primary ballot, and she ceased to be qualified for that office by virtue of this Court's decision in *Berg*, 2020 ND 178.

[¶17] The words "cease" and "qualified" are not defined in the statute. When a word is not defined in the code, it is to be given its ordinary meaning. N.D.C.C. §§ 1-02-02 and -03. "Cease" is defined as "[t]o stop; to become extinct; to pass away; to come to an end; to suspend or forfeit. A cessation of activity." *Black's Law Dictionary* 202 (5th ed. 1979). "Qualified" is defined as "having complied with the specific requirements or precedent conditions (as for an office or employment): ELIGIBLE[.]" *Webster's Ninth New Collegiate Dictionary* 963 (9th ed. 1988). *See also Black's Law Dictionary* 1116-17 (5th ed. 1979) (defining "qualified" as "Adapted; fitted; entitled; susceptible; capable; competent; fitting; possessing legal power or capacity; eligible; as a 'qualified voter' (*q.v.*)" and defining "qualification" as "The possession by an individual of the

6

qualities, properties, or circumstances, natural or adventitious, which are inherently or legally necessary to render him eligible to fill an office or to perform a public duty or function.").

[¶18] In *Berg*, 2020 ND 178, ¶¶ 11, 15, 30, this Court held candidates seeking an elected office in the executive branch must have been a resident of this state for the five years preceding the election to office to be eligible, Martin will not have been a resident for the five years preceding the 2020 general election, and therefore she is not eligible to hold the office of insurance commissioner. Martin was not a resident for the required length of time, and therefore she was never eligible for the office. Martin never possessed the necessary qualifications to hold the office of insurance commissioner in this state. The ordinary meaning of "ceases to be qualified" requires that the candidate was once qualified and later stopped being qualified. Because Martin was never qualified to serve, the vacancy may not be filled under N.D.C.C. § 16.1-11-18(6)(d).

[¶19] Oversen and Anderson contend the above analysis improperly equates eligibility to hold office with qualification for the office. They contend our decision in *Berg* was limited to determining Martin's eligibility for office and qualification for the office was independently established by Jaeger placing Martin on the primary ballot. This contention ignores the full text of N.D.C.C. § 16.1-11-18(6)(d) which provides "[c]eases to be qualified to serve, if elected, as otherwise provided by law." The statute is unambiguous and the use of the term qualified is associated with eligibility through the use of the phrase "to serve." The term qualified in subdivision (d) cannot be separated from the reference "to serve." Here, we conclude the reference to "qualified to serve" in subdivision (d) is synonymous with "eligible to hold."

[¶20] Jaeger did not have a duty to place Anderson on the general election ballot for the office of insurance commissioner because none of the circumstances listed in N.D.C.C. § 16.1-11-18(6) apply. Oversen and Anderson have not demonstrated they are entitled to a writ of mandamus.

7

## IV

[¶21] We deny the petition for a writ of mandamus.

[¶22]  Jon J. Jensen, C.J.
       Daniel J. Crothers
       Lisa Fair McEvers
       Jerod E. Tufte

**VandeWalle, Justice, dissenting.**

[¶23] I respectfully dissent. Section 16.1-11-18(6)(d), N.D.C.C., provides a vacancy can be filled if a candidate "[c]eases to be qualified to serve, if elected, as otherwise provided by law." I believe the use of the term qualified in subdivision (6)(d) is ambiguous and a reasonable interpretation is that Martin was qualified when she was placed on the primary ballot by the Secretary of State. She subsequently ceased to be qualified when we determined she was not eligible to hold the office of insurance commissioner in our prior case. I would err on the side of placing a candidate's name on the ballot when ambiguity exists in a statute. Therefore, I dissent.

[¶24]  Gerald W. VandeWalle